RODGER R. COLE (CSB NO. 178865)
rcole@fenwick.com
FENWICK & WEST LLP
Silicon Valley Center
801 California Street
Mountain View, CA 94041
Telephone:    (650) 988-8500
Facsimile:    (650) 938-5200

RACHAEL G. SAMBERG (CSB NO. 223694)
rsamberg@fenwick.com
MARY E. MILIONIS (CSB NO. 238827)
mmilionis@fenwick.com
FENWICK & WEST LLP
555 California Street, 12th Floor
San Francisco, CA 94104
Telephone: (415) 875-2300
Facsimile: (415) 281-1350

Attorneys for Defendant
GLIMMERGLASS NETWORKS, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TERILOGY CO., LTD., | Case No.  3:08-CV-03364 EMC |
| Plaintiff, | **DEFENDANT GLIMMERGLASS NETWORKS, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS PURSUANT TO RULE 12(b)(6); MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** |
| v. | |
| GLIMMERGLASS NETWORKS, INC., | Date:          October 15, 2008<br>Time:          10:30 A.M.<br>Dept:          Courtroom C, 15th Floor<br>Judge:        The Honorable Edward M. Chen |
| Defendant. | Complaint Filed:  July 11, 2008<br>Trial Date:  None Set |

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

DEFENDANT'S NOTICE OF MOTION &
MOTION TO DISMISS PURSUANT TO
F.R.C.P. 12(b)(6): MPA

CASE NO. 3:08-CV-03364

# TABLE OF CONTENTS

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES ............................................................ 1

I.     INTRODUCTION AND SUMMARY OF ARGUMENT ................................................ 1

II.    ISSUES TO BE DECIDED ................................................................................... 2

III.   ALLEGATIONS OF THE COMPLAINT................................................................ 3

    A.    The Parties' First Agreement—an Investment in Exchange for Stock .................. 3

    B.    The Second Agreement—Distribution Rights Subject to Carve-Outs.................... 4

    C.    The Third Agreement—Another Investment in Exchange for Stock ..................... 5

    D.    Glimmerglass' Performance of the DA and the Present Dispute........................ 6

ARGUMENT ........................................................................................................... 7

IV.   LEGAL STANDARDS......................................................................................... 7

V.    PLAINTIFF'S FIRST CAUSE OF ACTION FOR FRAUD AND SECOND CAUSE OF ACTION FOR NEGLIGENT MISREPRESENTATION FAIL AS A MATTER OF LAW ................................................................................................ 8

    A.    Plaintiff Has Alleged Promissory Misrepresentations, Which Are Barred From Consideration Because the Agreements are Integrated................................ 9

        1.    The Agreements are Integrated and Thus Precluded from Consideration By the Parol Evidence Rule............................................ 10

            a.    The Agreements are Final and Complete...................................... 11

            b.    The Alleged Representations Would be Inconsistent With or Vary the Agreements ............................................................... 12

            c.    Had the Alleged Representations Been Agreed Upon, They Would Have Been Included in the Writings ................................. 13

            d.    The Alleged Representations Would Mislead a Fact-Finder ........ 14

        2.    The Fraud Exception to the Parol Evidence Rule Does Not Apply Because the Fraud Alleged is Promissory Fraud and the Agreements are Integrated ...................................................... 15

    B.    Plaintiff Fails to Identify the Allegedly False Representations With Sufficient Particularity Under Rule 9(b)................................................. 18

VI.   PLAINTIFF'S CLAIM FOR "MISTAKE – RESCISSION" FAILS AS A MATTER OF LAW AND SHOULD BE DISMISSED WITHOUT LEAVE TO AMEND ................................................................................................. 20

    A.    Plaintiff's Rescission Claim Fails Rule 9(b)'s Heightened Pleading Standard ............................................................................................ 21

    B.    The DA Cannot Be Rescinded as the Mistake Alleged Amounts Only to a Unilateral Mistake of Law, Which Cannot Justify Rescission. ............................. 22

1

**TABLE OF CONTENTS**
(continued)

2

Page

3

VII.    PLAINTIFF'S CLAIM FOR UNJUST ENRICHMENT FAILS AS A MATTER
         OF LAW AND SHOULD BE DISMISSED WITHOUT LEAVE TO AMEND............. 24

4

CONCLUSION ......................................................................................................................... 25

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

# TABLE OF AUTHORITIES

2

**Page(s)**

3

**CASES**

4

*Alling v. Universal Mfg. Corp.*,
   7 Cal. Rptr. 2d 718 (1992) ................................................................................... 9, 10, 12, 15

5

*Applied Elastomerics, Inc. v. Z-Man Fishing Prods.*,
   No. C 06-2469, 2007 U.S. Dist. LEXIS 19211 (N.D. Cal. Mar. 5, 2007) ...................... passim

6

*Banco do Brasil, S.A. v. Latian, Inc.*,
   234 Cal. App. 3d 973 (1991) ................................................................................................ passim

7

*Bank of Am. Nat'l Trust & Savings Ass'n v. Pendergrass*,
   4 Cal. 2d 258 (1935) ............................................................................................................. 16

8

*Bell Atl. Corp. v. Twombly*,
   127 S. Ct. 1955 (2007) ........................................................................................................ 7, 22

9

*Bradley v. Chiron Corp.*,
   136 F.3d 1317 (Fed. Cir. 1998)...................................................................................... 21, 22, 24

10

*Breeden v. Richmond Cmty. Coll.*,
   171 F.R.D. 189 (M.D.N.C. 1997) ........................................................................................ 21

11

*Casa Herrera, Inc. v. Beydoun*,
   32 Cal. 4th 336 (2004) ................................................................................................... 10, 15

12

*City of Oakland v. Comcast Corp.*,
   No. C 06-5380 CW, 2007 U.S. Dist. LEXIS 14512 (N.D. Cal. Feb. 14, 2007) ................. 9, 15

13

*Cont'l Airlines, Inc. v. McDonnell Douglas Corp.*,
   216 Cal. App. 3d 388 (1989).................................................................................................. 10

14

*Creager v. Yoshimoto*,
   No. C 05-01985 JSW, 2007 U.S. Dist. LEXIS 77309 (N.D. Cal. Oct. 9, 2007) ................... 24

15

*Epstein v. Wash. Energy Co.*,
   83 F.3d 1136 (9th Cir. 1996)................................................................................................ 8, 22

16

*Genesis Bio-Pharmaceuticals, Inc. v. Chiron Corp.*,
   27 Fed. Appx. 94 (3rd Cir. 2002)........................................................................................... 10

17

*Ghirardo v. Antonioli*,
   14 Cal. 4th 39 (1996) ........................................................................................................... 25

18

*Goodyear Tire & Rubber Co. v. Murphy's, Inc.*,
   No. C-91-4483 SBA, 1992 U.S. Dist. LEXIS 13469 (N.D. Cal. July 14, 1992)....... 10, 11, 15

19

*Hedging Concepts, Inc. v. First Alliance Mortgage Co.*,
   41 Cal. App. 4th 1410 (1996) ........................................................................................... 23, 24

20

*Holloway v. King*,
   161 Fed. Appx. 122 (2nd Cir. 2005) .................................................................................... 10

21

*Iconix, Inc. v. Tokuda*,
   457 F. Supp. 2d 969 (N.D. Cal. 2006) ................................................................................. 9, 11

22

*In re Late Fee & Over-Limit Litig.*,
   528 F. Supp. 2d 953 (N.D. Cal 2007) .................................................................................. 25

23

*In re Marriage of Mansell*,
   217 Cal. App. 3d 219 (1989)................................................................................................ 23

24

25

26

27

28

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*In re Silicon Graphics Inc. Sec. Litig.,*
    183 F.3d 970 (9th Cir. 2002) ............................................................................. 8

*In re Tibco Software Secs. Litig.,*
    No. C 05-2146 SBA, 2006 U.S. Dist LEXIS 36666 (N.D. Cal. Dec. 14, 2001) ..................... 5

*Kucharczyk v. The Regents of the Univ. of Cal.,*
    946 F. Supp. 1419 (N.D. Cal. 1996) ................................................................... 24

*Lectrodryer v. Seoul Bank,*
    77 Cal. App. 4th 723 (Cal. Ct. App. 2000) ........................................................... 25

*Mat-Van, Inc. v. Sheldon Good & Co. Auctions,*
    No. 07-CV-912-IEG (BLM), 2008 U.S. Dist. LEXIS 8724 (S.D. Cal. Feb. 6,
    2008) ..................................................................................................... passim

*McKesson HBOC, Inc. v. New York State Common Ret. Fund, Inc.,*
    339 F.3d 1087 (9th Cir. 2003) .......................................................................... 8

*Melchior v. New Line Prods., Inc.,*
    106 Cal. App. 4th 779 (2003) ......................................................................... 24

*Moore v. Kayport Package Express, Inc.,*
    885 F.2d 531 (9th Cir. 1989) ...................................................................... 19, 20

*N. Star Int'l v. Ariz. Corp. Comm'n,*
    720 F.2d 578 (9th Cir. 1983) ........................................................................... 7

*Neilson v. Union Bank of Cal., N.A.,*
    290 F. Supp. 2d 1101 (C.D. Cal. 2003) ............................................................... 18

*Oestreicher v. Alienware Corp.,*
    544 F. Supp. 2d 964 (N.D. Cal. 2008) ................................................................ 25

*Pacesetter Homes, Inc. v. Brodkin,*
    5 Cal. App. 3d 206 (1970) ......................................................................... 15, 17

*Price v. Wells Fargo Bank,*
    213 Cal. App. 3d. 465 (1989) ........................................................................... 9

*Reed v. Turner,*
    No. 1439,  U.S. Dist. LEXIS 2075 (E.D. Pa. July 10, 1941) ......................................... 22

*Roots Ready Made Garments v. Gap, Inc.,*
    No. C 07-03363 CRB, 2008 U.S. Dist. LEXIS 9191 (N.D. Cal. Jan. 28, 2008) ............. 16, 24

*Sanguinetti v. Viewlogic Sys., Inc.,*
    No. C 95 2286 TEH,1996 U.S. Dist. LEXIS 1219 (N.D. Cal. Jan. 24, 1996) ................ passim

*Shwarz v. U.S.,*
    234 F.3d 428 (9th Cir. 2000) ........................................................................... 8

*Thomas v. Walt Disney Co.,*
    No. C-07-4392 CW, 2008 U.S. Dist. LEXIS 14643 (N.D. Cal. Feb. 14, 2008) ...................... 8

*Vess v. Ciba-Geigy Corp. USA,*
    317 F.3d 1097 (9th Cir. 2003) ...................................................................... 18, 20

*Vincent Consol. Commodities, Inc. v. Am. Trading & Transfer, LLC,*
    No. 07-CV-20 W (LSP), 2007 U.S. Dist. LEXIS 53680 (S.D. Cal. July 24, 2007) .............. 25

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*Walker v. USAA Cas. Ins. Co.*,
  474 F. Supp. 2d 1168 (E.D. Cal. 2007) .................................................................................. 24

*Wang & Wang, LLP v. Banco Do Brasil, S.A.*,
  No. Civ. S-06-00761 DFL KJM, 2007 U.S. Dist. LEXIS 25813 (E.D. Cal. Mar.
  26, 2007) .................................................................................................................... 18, 19, 20

*Welles v. Acad. of Motion Picture Arts & Scis.*,
  No. CV 03-05314 DDP (JTLx), 2004 U.S. Dist. LEXIS 5756 (C.D. Cal. Mar.
  4, 2004) .................................................................................................................................. 24

*Wietschner v. Monterey Pasta Co.*,
  294 F. Supp. 2d 1102 (N.D. Cal. 2003) .................................................................................. 5

**STATUTES**

Cal. Civ. Code § 1577 .............................................................................................................. 23, 24

Cal. Civ. Code § 1578 .............................................................................................................. 23

Cal. Civ. Code § 1625 .............................................................................................................. 9

Cal. Civ. Code § 1689(b)(1) ..................................................................................................... 23

Code Civ. Proc. § 1856(a) ........................................................................................................ 9

Code Civ. Proc. § 1856(d) ........................................................................................................ 10

Code Civ. Proc. § 1856(f) ........................................................................................................ 15

Fed. R. Civ. P. 9(b) .................................................................................................... 18, 19, 21, 22

**OTHER AUTHORITIES**

2 *Moore's Federal Practice*, § 9.03[2] (Matthew Bender 3d ed. 2008) ...................................... 21

3 Corbin, Contracts (1960) § 578 ............................................................................................. 11

**NOTICE OF MOTION AND MOTION TO DISMISS**

PLEASE TAKE NOTICE that on October 15, 2008, at 10:30 a.m., in the courtroom of The Honorable Edward M. Chen, United States Courthouse, Courtroom C, 15th Floor, 450 Golden Gate Avenue, San Francisco, California, defendant Glimmerglass Networks, Inc. ("Glimmerglass") will move to dismiss the First, Second, Fourth, and Fifth Causes of Action of the Complaint filed in this action by plaintiff Terilogy Co., Ltd. ("Plaintiff" or "Terilogy") pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted.

Glimmerglass moves to dismiss the claims set forth in the Complaint on the following grounds:  (1) the First Cause of Action for fraud and Second Cause of Action for negligent misrepresentation fail to state a claim because the agreements upon which the claims are based contain enforceable integration clauses that preclude the introduction of purported representations made outside the agreements; the Complaint fails to identify the alleged misrepresentations with sufficient specificity under Rule of Civil Procedure 9(b) ("Rule 9(b)"); and, the extrinsic representations alleged pertain to non-actionable opinions, not statements of material fact; (2) the Fourth Cause of Action for mistake fails to state a claim because the Complaint fails to plead the circumstances of mistake with sufficient particularity, and because an alleged unilateral mistaken interpretation of contractual terms does not state grounds for rescission as a matter of law; and (3) the Fifth Cause of Action for unjust enrichment fails to state a claim because unjust enrichment is not an actionable independent cause of action, and because the fraud allegations upon which it depends fail as a matter of law.

This motion is based on this Notice of Motion and Motion, the Memorandum of Points and Authorities that follows, all pleadings and papers filed herein, oral argument by counsel and such other and further matters that properly may be received by the Court.

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

1

**MEMORANDUM OF POINTS AND AUTHORITIES**

2

**I.    INTRODUCTION AND SUMMARY OF ARGUMENT**

3       Plaintiff Terilogy Co., Ltd., a global provider of service assurance software, complains

4   that Defendant Glimmerglass fraudulently induced it twice to purchase Glimmerglass stock, and

5   to enter into a distribution agreement for Glimmerglass' products in Japan, by asserting false

6   promises outside of the Parties' integrated agreements that Terilogy would be given exclusive

7   distribution rights.  Terilogy further complains that Glimmerglass terminated the Parties'

8   distribution agreement in bad faith after nearly a year because it had no intention of providing the

9   alleged exclusive distribution rights.  These alleged promises do not appear on the face of the

10  integrated agreements (and, in fact, the only agreement to actually provide distribution rights at

11  all does so subject to multiple, express carve-outs), but Terilogy claims that Glimmerglass'

12  alleged failure to provide exclusivity entitles it to relief under various theories.  Under governing

13  California law, Terilogy's claims fail as a matter of law:

14       <u>Fraud and Negligent Misrepresentation (First and Second Causes of Action)</u>.  Plaintiff's

15  fraud and negligent misrepresentation claims fail to state a cause of action on multiple grounds.

16
17
18  - First, Plaintiff's claims are barred by the parol evidence rule because each of the
      agreements at issue—the two stock purchase agreements (respectively, the "First" and
      "Second SPAs") and the Parties' distribution agreement ("DA")—is integrated as the
      final and complete expression of the Parties' understanding, precluding introduction
      of alleged misrepresentations to add to or vary the agreements' terms.  While there is
19    a limited "fraud exception" to the applicability of the parol evidence rule, that
      exception does not apply because Plaintiff alleges "promissory fraud"—i.e. that
20    Glimmerglass would provide or perform certain acts or obligations in the future—
      which as a matter of law cannot form the basis of a fraud or misrepresentation claim
21    where the agreements are fully integrated.  For these reasons, Plaintiff's deceit-based
22    claims should be dismissed without leave to amend.

23
24  - Relatedly, the alleged misrepresentations are non-actionable opinions regarding future
      performance, not statements of present fact, and thus cannot state a claim for relief.

25  - Finally, Plaintiff entirely fails to satisfy the heightened pleading requirements of Rule
26    9(b).  In the context of alleged fraud by a corporation, Plaintiff is required to specify
      the circumstances of the fraud with particularity—including, among other things, the
      specific speakers, content of the statements, timing, and contexts in which they were
27    made.  Plaintiff alleges <u>none</u> of these particulars, merely asserting that
28    "Glimmerglass" promised "exclusivity."  Its claims are inadequate as a matter of law.

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

1    <u>Mistake-Rescission of Contract (Fourth Cause of Action)</u>.  Plaintiff seeks rescission of all

2    three Agreements premised upon its assertion that the Parties did not have an understanding as to

3    the definition of an "OEM sale"—one of the carve-outs to Terilogy's distribution rights—in the

4    DA.  Plaintiff does not explain how an alleged mistaken interpretation of a term in the DA can

5    justify rescission of the SPAs, but in any event its claim fails as a matter of law on several

6    grounds.  First, Plaintiff fails to allege the circumstances and nature of mistake with sufficient

7    particularity, and does not even identify what the alleged disparities of understanding were.  As

8    such, there are no factual allegations upon which to permit Plaintiff to be released from the

9    Agreements, though Plaintiff apparently is dissatisfied with the terms they agreed to.  In addition,

10   Plaintiff styles its claim as a "mutual mistake of fact," but purported mistaken interpretations of a

11   contractual term are mistakes of law, not fact.  Where parties are alleged to have differing

12   constructions of a contractual term, such mistake of law is <u>unilateral</u>, not mutual, and cannot

13   warrant rescission as a matter of law.

14        <u>Unjust Enrichment (Fifth Cause of Action)</u>:  Finally, Plaintiff's claim for unjust

15   enrichment fails to state a claim both because unjust enrichment is a request for relief and not a

16   recognized independent cause of action under California law, and the fraud claims upon which it

17   is based fail as a matter of law.

18        Accordingly, Glimmerglass respectfully requests that the above causes of action be

19   dismissed and, where appropriate, without leave to amend.

20   **II.    ISSUES TO BE DECIDED**

21   1.    Does the parol evidence rule preclude the alleged misrepresentations from being

22         considered to form the basis of fraud and negligent misrepresentation claims?

23   2.    Do the fraud and negligent misrepresentation claims fail because the alleged parol

24         misrepresentations pertain to non-actionable opinions rather than statements of fact?

25   3.    Do the fraud and negligent misrepresentation claims fail to state a claim because the

26         Complaint fails to allege the purported misrepresentations with sufficient particularity

27         under Rule of Civil Procedure (9)(b)?

28   4.    Does the claim for mistake fail because Plaintiff fails to plead facts and circumstances

1    demonstrating an actionable mistake with sufficient particularity under Rule 9(b)?

2    5.    Does the claim for mistake fail because Plaintiff alleges a unilateral mistake of law that

3          cannot form the basis for a rescission claim?

4    6.    Does the claim for unjust enrichment fail to state a claim because unjust enrichment is not

5          an actionable independent cause of action?

6    7.    Does the claim for unjust enrichment fail because the fraud allegations and claims for

7          relief upon which is based fail as a matter of law?

8    **III.    ALLEGATIONS OF THE COMPLAINT**[1]

9        **A.    The Parties' First Agreement—an Investment in Exchange for Stock.**

10       Defendant Glimmerglass, a Delaware corporation headquartered in Hayward, California,

11   develops and markets Intelligent Optical Switching solutions for the telecommunications industry

12   and governments.  ¶ 2.  Plaintiff Terilogy, a Japanese company headquartered in Tokyo, provides

13   service assurance software to telecommunications companies and Internet Service Providers.  ¶ 1.

14       Plaintiff alleges that in 2005, a Japanese corporation introduced Plaintiff to Glimmerglass

15   as a potential reseller of Glimmerglass' products in Japan.  ¶ 6.  Plaintiff claims that it initially

16   sought to enter into an exclusive distribution agreement with Glimmerglass, but Glimmerglass

17   rejected an exclusive deal.  *Id.*  Glimmerglass allegedly counter-proposed that Plaintiff invest in

18   Glimmerglass in exchange for exclusive distribution rights in Japan.  *Id.*  Subsequently, the

19   Parties allegedly had several unidentified meetings "in which [Plaintiff] made clear that its intent

20   was to exchange its investment in Glimmerglass for an exclusive distribution agreement."  ¶ 7.

21   Plaintiff does not explain or set forth what was purportedly said at the meetings, who said it, or

22   where and when the meetings took place.  *See generally* Complaint.

23       On or about February 9, 2006, Plaintiff made an investment in Glimmerglass through the

24   First SPA, a copy of which Plaintiff attaches as Exhibit A to the Complaint.  ¶ 7 & Ex. A.

25   Through the First SPA, Plaintiff invested $1M in Glimmerglass in exchange for 2,115,506

26   

27   [1] The following alleged facts are all taken from the Complaint filed by Plaintiff on or about
     July 11, 2008, and are assumed to be true for purposes of this motion only.  All paragraph

28   citations throughout are to the Complaint unless otherwise noted, and all references to "Exhibits"
     refer to the exhibits attached to and filed with the Complaint.

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

1    Glimmerglass Series B1 shares as consideration. ¶ 7; Ex. A at ¶ 1.2. The First SPA does not,

2    itself, convey or provide for any actual distribution rights—exclusive or otherwise. *See generally*

3    Ex. A. In fact, the First SPA does not even mention exclusivity. *Id.* However, Plaintiff alleges

4    that the following provision makes "explicit" that the Parties' intended the stock purchase to be

5    an "exchange of investment for exclusive distribution rights":

6        [Glimmerglass] and Terilogy Co., Ltd., a Japanese systems integrator, intend to negotiate
         a distribution agreement for Terilogy to sell the Company's products in Japan. As part of
7        the relationship, it would be expected that Terilogy would invest $1 million in the
         Company's Series B-1 financing.
8

9    ¶ 9 & Ex. C at ¶ 3.7 (b)(i) (Schedule of Exceptions to First SPA).

10        Significantly, though omitted from mention by Plaintiff, the First SPA also contains an

11   integration clause that confirms that it is the entire agreement between the Parties on those issues:

12       **Entire Agreement**. This Agreement, the Exhibits and Schedules hereto, and the other
         documents delivered pursuant hereto constitute the full and entire understanding and
13       agreement between the parties with regard to the subjects hereof and no party shall be
         liable or bound to any other in any manner by any representations, warranties, covenants
14       and agreements except as specifically set forth herein and therein.

15   Ex. A at ¶ 6.4. The First SPA further provides that it can be amended or modified "only upon the

16   written consent of the Company and holders of at least a majority of the then outstanding shares .

17   . ." *Id.* at ¶ 6.6.

18        **B.    The Second Agreement—Distribution Rights Subject to Carve-Outs.**

19        On the same day that the Parties entered into the First SPA, the Parties also signed a

20   distribution agreement ("DA") regarding the terms and conditions for Plaintiff's distribution of

21   Glimmerglass' products in Japan, as contemplated by the First SPA. ¶ 8 & Ex. B. The DA does

22   not provide for universal exclusivity in distribution rights in Japan. Instead, Terilogy would be

23   appointed "Sole Master Distributor" only in certain geographic regions, "subject to existing third

24   party rights and the rights reserved below," ¶ 8 & Ex. B. at ¶¶ 1.1, 1.2. These reservations and

25   limitations expressly state that Plaintiff would have only "non exclusive responsibility" in any

26

27

28

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

1   vertical markets in Japan other than those specified in Exhibit B to the Distributor Agreement,[2]

2   and even as to *those* vertical markets there were further carve-outs.  Ex. B at ¶¶ 1.1, 1.2; RJN Ex.

3   A (carve-outs in vertical markets).  Likewise, the DA states that Plaintiff "will not have exclusive

4   responsibility for OEMs, (that is, purchasers of Products who incorporate the Products into a

5   substantially different product for resale . . .[Original Equipment Manufacturers])."  Ex. B. ¶ 1.2.

6   Similarly, there were further reservations on Plaintiff's non-exclusive rights vis-à-vis those

7   OEMs.  *Id.*; *see also*, *e.g.,* Complaint ¶¶ 8, 12, 39 (noting carve-outs).

8          Subject to such restrictions on Plaintiff's distribution rights, the DA states that

9   "Manufacturer [Glimmerglass] currently has one existing reseller in the territory.  Manufacturer

10  will use reasonable efforts to lawfully terminate or modify this contractual relationship within a

11  reasonable time to ensure Distributor's 'master' status . . ."  ¶ 8; Ex. B ¶ 1.1.

12         As with the First SPA, the Complaint omits mention of the DA's integration clause which

13  confirms that it is the entire agreement between the parties regarding distribution rights and the

14  other matters therein, and supersedes any prior or contemporaneous representations or

15  agreements:

16         **Entire Agreement**.  This Agreement, including all exhibits hereto, constitutes the entire
           and exclusive agreement between the parties relating to its subject matter and supersedes
17         all prior or contemporaneous representations, discussions, negotiations, and agreements,
           whether written or oral, relating to its subject matter.  This Agreement may be amended or
18         modified only by a writing that is signed by duly authorized representatives of each party.

19  Ex. B at ¶ 10.11.

20         **C.    The Third Agreement—Another Investment in Exchange for Stock.**

21         Plaintiff alleges that in June of 2006, approximately  four months after having entered

22  into the DA, Plaintiff made a second investment in Glimmerglass in exchange for shares of

23  Glimmerglass stock.  Through a second and separate stock purchase agreement, Plaintiff invested

24  ───────────────
    [2] Plaintiff attaches the body of the DA to the Complaint; however, it failed to attach the DA's
25  exhibits, including Exhibit B entitled "Territory" ("Territory Exhibit").  For the reasons explained
    in Defendant's Request For Judicial Notice ("RJN"), filed herewith, the Court can and should
26  take judicial notice of the Territory Exhibit as Plaintiff's claims, which revolve around the scope
    of its geographic and market territory, necessarily rely upon it.  *See, e.g., In re Tibco Software*
    *Secs. Litig.,* No. C 05-2146 SBA, 2006 U.S. Dist LEXIS 36666, *48 (N.D. Cal. Dec. 14, 2001);
27  *Wietschner v. Monterey Pasta Co.,* 294 F. Supp. 2d 1102, 1109 (N.D. Cal. 2003).  A true and
    correct copy of the Territory Exhibit is attached as Exhibit A to the RJN ("RJN Ex. A"), and
28  authenticated in the Declaration of Robert A. Lundy filed in support of the RJN.

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

1   $135,610.54 in Glimmerglass and received 286,885 Glimmerglass Series B1 shares as

2   consideration.  ¶ 10 & Ex. D at ¶ 1.2.[3]  Like the First SPA, the Second SPA does not convey or

3   provide for any actual distribution rights (whether exclusive or non-exclusive), and makes no

4   mention of exclusivity.  *See generally* Ex. D.  Plaintiff similarly alleges, however, that the

5   following provision "made explicit that Terilogy and Glimmerglass entered into the Second

6   [SPA] in exchange for Sole Master Distributor status as Glimmerglass' distributor in Japan":

7       The Company and Terilogy Co., Ltd ("Terilogy"), a Japanese systems integrator, signed a
        distribution agreement for Terilogy to sell the Company's products in Japan.  Terilogy
8       also invested in Glimmerglass' Series B1 Preferred Stock.

9   ¶ 10 & Ex. E at ¶ 3.7(b)(i).  (Plaintiff does not subsequently explain or allege how it entered into

10  the Second SPA in exchange for certain promises made in the DA, signed four months *prior* to

11  the Second SPA's execution.)

12      The Second SPA also contains an integration clause identical to that in the First SPA,

13  stating that it is the "entire agreement" between the parties as to its subject matter, and that

14  neither party is bound by any other "representations, warranties, covenants and agreements"

15  except as set forth therein.  Ex. D at ¶ 6.4.  Also like the First SPA, the Second SPA further

16  provides that it can be amended or modified "only upon the written consent" of Glimmerglass and

17  the majority of its shareholders.  *Id*. at ¶ 6.6.

18      **D.    Glimmerglass' Performance of the DA and the Present Dispute**.

19      Plaintiff alleges that after entry into these three Agreements—the First SPA, DA, and

20  Second SPA—Glimmerglass failed to terminate its distribution agreement in Japan with a

21  company called Nissho, and instead entered into negotiations with Nissho for a new distribution

22  agreement.  ¶ 11.  Plaintiff demanded that Glimmerglass cease these negotiations as they were

23  "undercutting [Plaintiff's] Sole Master Distributor status."  ¶ 12.  Glimmerglass "assured

24  [Plaintiff] that this was not the case," and explained that "the agreement with Nissho fell within

25  the Original Equipment Manufacturer 'OEM' exception to the Distribution Agreement."  *Id*.

26      Subsequently, in September 2006, "[Plaintiff], still believing that Glimmerglass was

27  ───────────────

28  [3] When addressed collectively, the First SPA, DA, and Second SPA are referred to as the
    "Agreements."

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

1    operating in good faith," wanted to "clarify the definition of OEM as well as the rights and

2    obligations of the parties pursuant to the original Distribution Agreement." ¶ 15. The parties

3    entered into negotiations for an addendum to provide "greater clarity to the OEM issue." *Id.*

4    After these negotiations, Glimmerglass declined to enter into the proposed addendum. *Id.*

5    Terilogy now claims that the Parties never had the same understanding of what an "OEM sale"

6    was (as defined in the DA) when they entered into the DA, and that this constitutes a "mutual

7    mistake of fact" exposing all of the Agreements to rescission. ¶¶ 38-41, 44.

8        On or about January 23, 2007, almost a full year after the Parties signed the DA,

9    Glimmerglass exercised its rights under the DA's Termination for Convenience provision to

10    terminate the agreement. ¶ 16 & Ex. B at ¶ 6.2. Plaintiff alleges that, "[w]hile the termination

11    was ostensibly for convenience, it is clear now that Glimmerglass had no intention of ever

12    actually providing [Plaintiff] with the exclusive distributor status in Japan . . ." ¶ 16. Based on

13    the above-alleged circumstances, on or about July 11, 2008, Plaintiff filed a Complaint for fraud;

14    negligent misrepresentation; breach of covenant of good faith and fair dealing; mistake; and

15    unjust enrichment. This motion to dismiss follows.[4]

16                                **ARGUMENT**

17    **IV.    LEGAL STANDARDS**

18        "The purpose of a motion to dismiss under Rule 12(b)(6) is to test the legal sufficiency of

19    the complaint." *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983). A

20    complaint "must contain either direct or inferential allegations respecting all the material

21    elements necessary to sustain recovery under some viable legal theory." *Bell Atl. Corp. v.*

22    *Twombly*, 127 S. Ct. 1955, 1969 (2007) (citation omitted). In attempting to plead sufficient facts,

23    a plaintiff must suggest his or her right to relief is more than merely conceivable, but plausible on

24    its face—that is, "plausibly suggesting (not merely consistent with)" a right to relief. *Id.* at 1966,

25    1974. The Court need not accept as true any allegations that are conclusory, legal conclusions,

26    unwarranted deductions of fact or unreasonable inferences. *See Epstein v. Wash. Energy Co.*, 83

_____

[4] Though Glimmerglass disputes that Plaintiff's Third Cause of Action (breach of good faith and fair dealing) constitutes a claim for relief, only Plaintiff's First, Second, Fourth, and Fifth Causes of Action are at issue herein.

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

1    F.3d 1136, 1140 (9th Cir. 1996).  A motion to dismiss should be granted <u>without leave to amend</u>

2    when it is clear that the deficiencies of the complaint could not be cured by amendment.

3    *McKesson HBOC, Inc. v. New York State Common Ret. Fund, Inc.*, 339 F.3d 1087, 1096 (9th Cir.

4    2003) (affirming dismissal without leave to amend).

5         The Court may consider exhibits attached to the complaint and other documents

6    referenced therein "'whose authenticity no party questions,'" even if not physically attached.

7    *Thomas v. Walt Disney Co.*, No. C-07-4392 CW, 2008 U.S. Dist. LEXIS 14643, at *5 n.1 (N.D.

8    Cal. Feb. 14, 2008); *In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970, 986 (9th Cir. 2002).

9    The court may also consider any matter subject to judicial notice.  *See, e.g., Shwarz v. U.S.*, 234

10    F.3d 428, 435 (9th Cir. 2000).

11    **V.    <u>PLAINTIFF'S FIRST CAUSE OF ACTION FOR FRAUD AND SECOND CAUSE</u>**

12    **<u>OF ACTION FOR NEGLIGENT MISREPRESENTATION FAIL AS A MATTER</u>**
      **<u>OF LAW.</u>**

13         Plaintiff's First Cause of Action (fraud) and Second Cause of Action (negligent

14    misrepresentation) assert that Glimmerglass induced Plaintiff into entering each of the three

15    agreements with two types of allegedly false promises: (1) Glimmerglass would provide, or use

16    its "best efforts" to provide, Plaintiff with exclusive distribution rights in Japan, and (2)

17    Glimmerglass would use "reasonable efforts" to grant Plaintiff "Sole Master Distributor Status"

18    in exchange for Plaintiff's purchase of Defendant's stock.  To that end, Plaintiff asserts:

19    •  "Glimmerglass induced Terilogy to invest $1.136 million in Glimmerglass with the false
20       promise that Terilogy would have exclusive distribution rights in Japan." (¶ 17)

21    •  "While the termination was ostensibly for convenience, it is clear now that Glimmerglass
         had no intention of ever actually providing Terilogy with the exclusive distributor status
22       in Japan that both parties knew was the fundamental basis for Terilogy's substantial
         investment in Glimmerglass." (¶ 16)
23

24    •  "The representations made by Glimmerglass set forth above—that among other things
         Glimmerglass intended to use its best efforts to grant Terilogy exclusive distribution
25       rights in Japan—were false when Glimmerglass made them . . ." (¶ 19)

26    •  "Glimmerglass represented that it would make reasonable efforts to grant Terilogy Sole
         Master Distributor Status of Glimmerglass' products in exchange for Terilogy's
27       investment in Glimmerglass' shares."  (¶ 25)

28

1    Such allegations fail to state claims for fraud and negligent misrepresentation on several grounds.

2          **A.**    **Plaintiff Has Alleged Promissory Misrepresentations, Which Are Barred**

3              **From Consideration Because the Agreements are Integrated**.

4          First, Plaintiff is precluded from introducing such alleged extrinsic representations to form

5    the basis for the fraud and negligent misrepresentation claims under the parol evidence rule

6    because the Agreements are integrated.[5]   California's parol evidence rule provides that: "[t]erms

7    set forth in a writing by the parties as a final expression of their agreement with respect to such

8    terms as are included therein may not be contradicted by evidence of any prior agreement or of a

9    contemporaneous oral agreement" Code Civ. Proc. § 1856(a); *see also* Cal. Civ. Code § 1625

10   (written agreement supersedes prior or contemporaneous negotiations or stipulations).  The parol

11   evidence rule "prohibits the introduction of any extrinsic evidence . . . to vary, alter or add to the

12   terms of an integrated written agreement" (*Alling v. Universal Mfg. Corp.*, 7 Cal. Rptr. 2d 718,

13   731 (1992)) so as "to make sure the parties' final written understanding is not changed."  *See*

14   *Mat-Van, Inc. v. Sheldon Good & Co. Auctions*, No. 07-CV-912-IEG (BLM), 2008 U.S. Dist.

15   LEXIS 8724, at *8 (S.D. Cal. Feb. 6, 2008) (certain fraud allegations inadmissible to state a claim

16   under the parol evidence rule) ("*Mat-Van* 2008"); *Iconix, Inc. v. Tokuda*, 457 F. Supp. 2d 969,

17   977 (N.D. Cal. 2006).

18         The parol evidence rule applies regardless of whether the claim is denominated as one for

19   breach of contract or fraud.  *Sanguinetti v. Viewlogic Sys., Inc.*, No. C 95 2286 TEH,1996 U.S.

20   Dist. LEXIS 1219, at *33 (N.D. Cal. Jan. 24, 1996) (applicable to fraud in inducement claims);

---

[5] While the misrepresentations alleged are clearly extrinsic, since the Agreements on their face do
not provide for them, it bears noting at the outset that Plaintiff's fraud and misrepresentation
claims would fail even if Plaintiff asked that they be construed as asserting that Glimmerglass
lacked intention to perform an *express contractual covenant* (such as the DA's provision
regarding the use of "reasonable efforts" to bestow "Sole Master Distributor" status; *see*
Complaint at ¶ 25).  First, if such allegations were permitted, every breach of contract claim could
be converted to fraud, since a party could *always* assert it was "induced" into the agreement based
on the other party's "promise" to perform it, or by a simple allegation that the other party never
intended to perform the agreement.  *See, e.g., Mat-Van, Inc. v. Sheldon Good & Co. Auctions,
LLC*, No. 07-CV-912 - IEG (BLM), 2007 U.S. Dist. LEXIS 54876, at *20 (S.D. Cal. July 27,
2007) ("*Mat-Van* 2007"); *Price v. Wells Fargo Bank*, 213 Cal. App. 3d. 465, 485 (1989).  Perhaps
more importantly, and as discussed more fully in Section V(A)(2), *infra*, promises that one will
perform provisions of an agreement are simply "opinions as opposed to facts, and thus not the
basis for a colorable [deceit-based] claim."  *See City of Oakland v. Comcast Corp.*, No. C 06-
5380 CW, 2007 U.S. Dist. LEXIS 14512, at *19 (N.D. Cal. Feb. 14, 2007) (emphasis added").

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

1    *Casa Herrera, Inc. v. Beydoun,* 32 Cal. 4th 336, 342-44 (2004) (affirming non-suit in fraudulent

2    misrepresentation case); *Cont'l Airlines, Inc. v. McDonnell Douglas Corp.*, 216 Cal. App. 3d 388,

3    416-422 (1989) (in fraud case, parol evidence not admissible to establish "pre-contract promise"

4    at variance with integrated agreement).  Where the rule applies, alleged pre-contractual promises

5    cannot form the basis for a claim where they would add to or vary the agreement.  *Id.*

6            1.    **The Agreements are Integrated and Thus Precluded from**
              **Consideration By the Parol Evidence Rule.**
7

8            The integration of an agreement and applicability of the parol evidence rule is a question

9    of law and "proper . . . to consider in ruling on a motion under Rule 12(b)(6)."  *Mat-Van* 2008,

10   2008 U.S. Dist. LEXIS 8724, at *7-8; *see, e.g., Goodyear Tire & Rubber Co. v. Murphy's, Inc*.,

11   No. C-91-4483 SBA, 1992 U.S. Dist. LEXIS 13469 (N.D. Cal. July 14, 1992) (stating rule, and

12   granting Rule 12(b)(6) motion to dismiss without leave to amend because agreements were

13   integrated); *Alling*, 5 Cal. App. 4th at 1435 (parol evidence rule applicability a question of law;

14   excluding extrinsic evidence based on finding of integration); *Holloway v. King*, 161 Fed. Appx.

15   122 (2nd Cir. 2005) (affirming Rule 12(b)(6) dismissal based on application of parol evidence);

16   *Genesis Bio-Pharmaceuticals, Inc. v. Chiron Corp*., 27 Fed. Appx. 94 (3rd Cir. 2002) (same).  To

17   confirm the rule's applicability, the court analyzes two issues: "(1) was the writing intended to be

18   an integration, i.e., a complete and final expression of the parties' agreement, precluding any

19   evidence of collateral agreements [citation]; and (2) is the agreement susceptible of the meaning

20   contended for by the party offering the evidence?"  *Banco do Brasil, S.A. v. Latian, Inc.*, 234 Cal.

21   App. 3d 973, 1001 (1991); *see also* Code Civ. Proc. § 1856(d).

22           Courts have found four questions to be useful in their analysis:  (1) whether the written

23   agreement appears to be complete; (2) whether the alleged oral agreement (or representation)

24   contradicts the writing; (3) whether the oral agreement might naturally be made as a separate

25   agreement; (4) whether a fact-finder might be misled by the introduction of the parol evidence.

26   *Banco Do Brasil*, 234 Cal. App. 3d at 1002-1003; *see also Alling*, 5 Cal. App. 4th at 1434; *Casa-*

27   *Herrera*, 32 Cal. 4th at 349.[6]  Each question will be considered in turn.

28   _____
     [6] Some courts in this district do not expressly inquire as to each of the four questions, but rather

DEFENDANT'S NOTICE OF MOTION &
MOTION TO DISMISS PURSUANT TO              10              CASE NO. 3:08-CV-03364
F.R.C.P. 12(b)(6); MPA

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

a.     The Agreements are Final and Complete.

The first question posed by *Banco Do Brasil*—whether the writing is the complete expression of the parties' agreement—can be answered affirmatively if the agreements contain integration clauses. *Banco Do Brasil* 234 Cal. App. 3d at 1001 (finding integration, and noting that "the presence of an 'integration' clause will be very persuasive, if not controlling"); *Sanguinetti*¸ 1996 U.S. Dist. LEXIS 1219, at *39-40 (pursuant to integration clause, extrinsic oral promises could not be considered); *Goodyear Tire & Rubber Co.*, 1992 U.S. Dist. LEXIS 13469, at *6 (integration clause confirmed that agreement was final expression); *Iconix*, 457 F. Supp. 2d at 977 (same).  The parties' intention of finality may also be ascertained from language that "state[s], for example, that 'there are no previous understandings or agreements not contained in the writing,' and thus express the parties' 'intention to nullify antecedent understandings or agreements'.  (See 3 Corbin, Contracts (1960) § 578, p. 411.) [citations omitted].'  <u>Indeed, if such a clause is adopted and used by the parties, it may well be conclusive on the issue of integration</u>." *Banco Do Brasil*, 234 Cal. App. 3d at 1001 (emphasis added).

Here, each of the Agreements contains an integration clause that states the agreement is the Parties' final and entire understanding. Ex. A at ¶ 6.4; Ex. B at ¶ 10.11; Ex. D at ¶ 6.4.  As the court found in *Banco Do Brasil*, in the presence of an exceptionally similar integration clause, it is "difficult to imagine how the parties could have more clearly expressed their intent to make the written instrument a full and complete expression of their agreement."  234 Cal. App. 3d at 1003.  The fact that each Agreement also states that it can be modified only with a signed writing (Ex. A at 6.6; Ex. B at 10.11; Ex. D at 6.6) further confirms each Agreement's finality and completeness. *Goodyear Tire & Rubber Co.*, 1992 U.S. Dist. LEXIS 13469, at *7-8 (a provision requiring a signed writing to modify it confirms that agreement is "complete and exclusive"); *Iconix*, 457 F. Supp. 2d at 977 (same).

address the basic two-part inquiry of whether (1) the agreement is final, and (2) the construction urged by the party seeking to introduce extrinsic evidence is consistent with the terms of the final agreement. *See, e.g., Iconix*, 457 F. Supp. 2d at 977.

DEFENDANT'S NOTICE OF MOTION &
MOTION TO DISMISS PURSUANT TO         11         CASE NO. 3:08-CV-03364
F.R.C.P. 12(b)(6): MPA

1
2

b.    The Alleged Representations Would be Inconsistent With or Vary the Agreements.

3     The second question—whether the extrinsic evidence would be inconsistent with the

4     agreement—can be answered affirmatively by showing, *inter alia*, that the terms sought to be

5     introduced would add to or vary the parties' understanding.  For example, in *Sanguinetti*,

6     plaintiffs claimed they were fraudulently induced into entering into a merger agreement based on

7     a false promise that they would be permitted to continue to operating independently.  In

8     considering the second *Banco Do Brasil* question, the court found that such alleged promises

9     would conflict with the written agreement which allowed the Board to make (or not make)

10    restrictions on Officers' authority, and "thus [were] subject to the parol evidence rule."  1996 U.S.

11    Dist. LEXIS 1219, at *42.

12    Even where, however, the intended additional evidence is not "directly at variance" with

13    the written agreement, but rather is, *arguendo*, simply a "consistent, additional term," parol

14    evidence is precluded by the existence of integration clauses.  *Mat-Van* 2008, 2008 U.S. Dist.

15    LEXIS 8724, at *10 (holding that Code Civ. Proc. § 1856(b)'s permission of the introduction of

16    "consistent, additional terms" is inapplicable where the agreement is integrated); *see also Alling*,

17    5 Cal. App. 4th at 1435 ("The terms set forth [in a writing] 'may be explained or supplemented by

18    evidence of consistent additional terms *unless the writing is intended also as a complete and*

19    *exclusive statement of the terms of the agreement.'*") (emphasis added).

20    Here, the second *Banco Do Brasil* question must also be answered affirmatively because

21    introduction of promises of "exclusive" distribution rights would vary the terms of the

22    distribution rights expressly provided for or cited in the Agreements.  According to Plaintiff's

23    own allegations and admission, the Agreements "make explicit" the parties' existing and intended

24    future distribution relationship," and do not provide for exclusivity.  Complaint ¶¶ 9, 10; Ex. C at

25    ¶ 3.7 (b)(i); Ex. B at ¶ 1.1 and RJN Ex. A; Ex. E at ¶ 3.7 (b)(i).  To the contrary, only the DA

26    mentions exclusivity at all, and it is expressly subject to various carve-outs and reservations.  Ex.

27    B. at ¶¶ 1.1, 1.2; RJN Ex. A.  These reservations and limitations expressly state that Plaintiff

28    would have only "non exclusive responsibility" in any vertical markets in Japan other than those

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

1   specified in Exhibit B to the Distributor Agreement, and were subject to further restrictions

2   regarding those markets.  Ex. B at ¶ 1.2; RJN Ex. A.  Likewise, the DA states that Plaintiff "will

3   not have exclusive responsibility for OEMs," and places further reservations on Plaintiff's non-

4   exclusive rights vis-à-vis those OEMs.  *Id.*; *see also*, e.g., Complaint ¶¶ 8, 12, 39 (noting carve-

5   outs).

6       Introduction of alleged prior or contemporaneous promises claiming that blanket

7   exclusivity would be provided therefore would vary the Agreements' terms and are inadmissible.

8   *See*, *e.g., Price*, 213 Cal. App. 3d at 484 ("if the false promise relates to the matter covered by the

9   main agreement and contradicts or varies the terms thereof, any evidence of the false promise

10  directly violates the parol evidence rule and is inadmissible").  Perhaps most importantly, <u>even if</u>

11  <u>the alleged extrinsic "exclusivity" representations would, *arguendo*, not "directly" conflict with</u>

12  <u>terms in the agreement, but rather were "consistent, additional terms," they still are inadmissible</u>

13  <u>because the agreements are integrated, and thus not even "additional" terms can be considered.</u>

14  *See, e.g., Mat-Van* 2008, 2008 U.S. Dist. LEXIS 8724, at *10.

        c.    <u>Had the Alleged Representations Been Agreed Upon, They Would</u>
15           <u>Have Been Included in the Writings</u>.

16

17      A court can affirmatively answer the third question posed by *Banco Do Brasil* by finding

18  that the additional term would have, had it been agreed upon, been included in the writing.  *See,*

19  *e.g., Banco Do Brasil*, 234 Cal. App. 3d at 1007 (finding it unlikely that the term would have

20  been contained in a separate, oral agreement on the same issues); *Sanguinetti*, 1996 U.S. Dist.

21  LEXIS 1219, at *43 (same).  As the court found in *Banco Do Brasil,* the fact that the oral

22  promises were alleged to be such an "integral and indispensable part of the entire transaction"

23  make it "inconceivable" that the alleged promises would not have been included in the final

24  agreement.  *Banco Do Brasil*, 234 Cal. App. 3d at 1007.  Likewise, in *Sanguinetti*, "Given the

25  ferocity with which Plaintiffs make this argument [that the oral promises were instrumental], it

26  seems incredible that such an important provision would not have been more specifically and

27  explicitly covered in the document governing the relationship between the parties participating in

28  the buyout."  *Sanguinetti*, 1996 U.S. Dist. LEXIS 1219, at *44.  Also relevant to this inquiry are

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

1    the sophistication of the parties and their representation by counsel. *Id.* at *43; *Banco Do Brasil*,

2    234 Cal. App. 3d at 1007 (representation by counsel and sophistication of parties suggested that

3    the allegedly-omitted promise would have been included in the final agreement).

4        The third *Banco Do Brasil* question must be answered affirmatively here because Plaintiff

5    expressly hinges its deceit-based claims on the fact that the alleged promises of exclusive

6    distribution rights were "fundamental" to the entire relationship between the parties, and that

7    Glimmerglass allegedly knew that exclusivity was the "sole" basis for the Parties' Agreements.

8    *See, e.g.,* Complaint ¶¶ 16 ("fundamental), 27 ("sole" basis).  The allegedly fundamental nature of

9    the representations, along with the sophistication of the parties (Terilogy is a "leading global

10   provider of service assurance software" (Complaint ¶ 1)) make it "inconceivable" that a promise

11   of exclusive distribution rights asserted to be so instrumental would not have been included in

12   Agreements that purport to be the final understanding as to such rights.  *See, e.g., Banco Do*

13   *Brasil*, 234 Cal. App. 3d at 1007; *Sanguinetti*, 1996 U.S. Dist. LEXIS 1219, at *43.

14                   d.    The Alleged Representations Would Mislead a Fact-Finder.

15       Finally, the court can affirmatively answer the fourth question if a fact-finder might be

16   misled by the introduction of the parol evidence.  In general, the question simply considers

17   whether a trier of fact would be misled by oral terms that would vary the written agreement.

18   *Sanguinetti*, 1996 U.S. Dist. LEXIS 1219, at *44 (finding that testimony outside the governing

19   document "would surely divert the trier of fact's attention from the governing legal document.");

20   *Banco Do Brasil,* 234 Cal. App. 3d at 1008 ("It seems obvious to us . . . that a trier of fact would

21   be misled by the contradictory terms of the alleged oral agreement").  Here, there can be little

22   dispute that introduction of terms which would change the nature of the Parties' Agreements and

23   would confuse or distract a factfinder from the governing terms.  *Banco Do Brasil*, 234 Cal. App.

24   3d at 1008; *Sanguinetti*, 1996 U.S. Dist. LEXIS 1219, at *43.  Indeed, introduction of such

25   confusing evidence could be outcome determinative of decisions on the issue and scope of

26   exclusivity and distribution rights, resulting in an erroneous decision by a trier of fact.

27       In sum, because the integration clauses confirm the Parties' intentions that the Agreements

28   are final and exclusive expressions of their understanding, the presumption of and test for the

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

1    parol evidence rule's applicability is satisfied.  Extrinsic evidence of oral promises thus cannot be

2    considered to form the basis of a claim for fraud or negligent misrepresentation, which should

3    accordingly be dismissed without leave to amend.  *See, e.g., Goodyear Tire & Rubber Co.*, 1992

4    U.S. Dist. LEXIS 13469, at *8.

5                    2.    **The Fraud Exception to the Parol Evidence Rule Does Not Apply
                           Because the Fraud Alleged is Promissory Fraud and the Agreements
6                          are Integrated.**

7            There is a limited exception to the parol evidence rule's applicability (i.e. a limited

8    circumstance in which pre-contract promises could be introduced to vary the terms of an

9    agreement despite the presence of an integration clause) where the evidence sought to be admitted

10   would establish illegality or fraud as to the validity of the agreement.  Code Civ. Proc. § 1856(f).

11   However, this "fraud exception" does not apply where the fraud alleged in the complaint is

12   "promissory fraud," "that is, promises made without the intention to perform."  *Mat-Van* 2008,

13   2008 U.S. Dist. LEXIS 8724, at *10-11; *see also Alling*, 5 Cal. App. 4th at 1436.

14           This is because an allegedly false promise is not actionable where it does not pertain to

15   *existing* and material facts, and promises of future acts or performance (even when made "without

16   intentions to perform") are opinions, not facts.  *Mat-Van* 2008, 2008 U.S. Dist. LEXIS 8724, at

17   *11-13 (applying rule); *City of Oakland*, 2007 U.S. Dist. LEXIS 14512, at *19 ("If the

18   representations were predictions that Comcast LLC would perform its obligations under the 2002

19   Agreements, then they would be opinions as opposed to facts, and thus not the basis for a

20   colorable negligent misrepresentation claim."); *Pacesetter Homes, Inc. v. Brodkin*, 5 Cal. App. 3d

21   206, 211 (1970) (holding statements that something "would" happen were not assertions of fact to

22   constitute a deceit claim).  <u>Thus, where a plaintiff, as is the case here, alleges that a defendant</u>

23   <u>"made misrepresentations as to defendant's future actions or future facts," then "plaintiffs are</u>

24   <u>making a promissory fraud claim" as to which extrinsic evidence and/or representations cannot be</u>

25   <u>considered to state a claim for fraud where the agreement is integrated.</u>  *Mat-Van* 2008, 2008 U.S.

26   Dist. LEXIS 8724, at *12 (emphasis added); *Casa Herrera,* 32 Cal. 4th at 346 ("[O]ur courts

27   have consistently rejected promissory fraud claims premised on prior or contemporaneous

28   statements at variance with the terms of a written integrated agreement."); *Roots Ready Made*

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

1    *Garments v. Gap, Inc.*, No. C 07-03363 CRB, 2008 U.S. Dist. LEXIS 9191, at *14 (N.D. Cal.

2    Jan. 28, 2008) (citing rule and finding such promises non-actionable on a motion to dismiss).[7]

3        *Mat-Van* 2008 illustrates this point well.  Plaintiffs claimed that the defendant fraudulently

4    induced them to enter into agreements to auction plaintiffs' resort islands to potential buyers.

5    2008 U.S. Dist. LEXIS 8724, at *2.  Seven of the nine alleged misrepresentations were purported

6    fraudulent promises regarding how defendants would perform the auction process, including, for

7    example, that "the auction would include no fewer than five islands or more than ten islands," the

8    "advertising fund would include a minimum of $500,000," "each island would be given equal

9    marketing and advertising exposure," "the auction would be held at the Four Seasons Hotel," and

10   "the auction would be aggressively advertised on television and through free public interest

11   articles in high end magazines."  *Id.* at *13.  The contracts between plaintiffs and the defendant

12   contained integration clauses.

13       The court found that these statements concerning future actions to be taken by the

14   defendant "are not misrepresentations of facts and are not admissible pursuant to the fraud

15   exception to the parol evidence rule" because the agreements were integrated.  *Id.*  The fraud

16   exception allows evidence only of misrepresentations of present *facts* which fraudulently induced

17   plaintiffs to enter into the contracts with defendant; promises of future performance or future facts

18   are not actionable.  *Id.*  Accordingly, to the extent plaintiffs' complaint was premised on those

19   allegations of future facts or actions, it did not state a claim for relief.  *Id.*

20       Likewise, in *Sanguinetti*, the plaintiffs' fraud claim was barred as a matter of law because

21

22   ─────────────────
     [7] The court in *Roots Ready*, granting a motion to dismiss dealing specifically with alleged
     promises made outside of a distribution agreement, as is the case here, also observed another
23   reason to preclude consideration of pre-contractual fraudulent promises:

24       It is appropriate to apply the parol evidence rule in the context of [promissory fraud]
         because when the statements relate to rights depending upon contracts yet to be made, the
25       party to whom statements were made 'has it in his power to guard in advance against any
         and all consequences of a subsequent change of conduct by the person with whom he is
26       dealing' by codifying the earlier promises in writing.

27   2008 U.S. Dist. LEXIS 9191, at *14 (*quoting Bank of Am. Nat'l Trust & Savings Ass'n v.
     Pendergrass,* 4 Cal. 2d 258, 264 (1935)).
28

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

1    the parol evidence rule precluded introduction of alleged promissory fraud statements where the

2    agreement was integrated.  1996 U.S. Dist. LEXIS 1219, at *47-49.  As noted above, Plaintiffs

3    claimed they were fraudulently induced into entering into a merger agreement based on promises

4    that they would be allowed to continue to operate independently.  *Id.* at *3-4, 48.  These

5    allegations squarely constituted allegations of promissory fraud, as they were promises regarding

6    future facts or performance purportedly made without the intent to perform.  *Id.* at *48.  Because

7    the alleged fraud was promissory, it "does not fall within the exception to the parol evidence rule,

8    [and] Plaintiffs cannot overcome the presumptive application of the parol evidence rule" since the

9    agreement was integrated.  *Id.*  The parties' agreement therefore superseded all prior or

10   contemporaneous representations, precluding a fraud claim as a matter of law.  *Id.* at *48-49.

11        The misrepresentations alleged by Plaintiff here are akin to those in *Mat-Van* 2008 and

12   *Sanguinetti.*  Plaintiff claims that, to induce Plaintiff to enter into the Agreements, Glimmerglass

13   promised that it would provide Plaintiff exclusivity (whether through subsequent agreements or

14   during the course of its future performance of its agreements), but had no intent to provide such

15   exclusivity.  Complaint at ¶¶ 17, 25-28.  Even to the extent that Plaintiff's allegations can be

16   construed as suggesting that Glimmerglass promised it would perform the express contractual

17   covenant in the DA requiring use of "reasonable efforts to grant Terilogy status as 'Sole Master

18   Distributor,'" but actually had "no intent to perform" that, then this, too, is merely a promise of

19   future performance.  *Id.* at ¶¶ 16-17; *see also Pacesetter Homes*, 5 Cal. App. 3d at 211.[8]

20        Allegations such as these are all classic assertions of promissory fraud—pertaining to a

21   promise of a future fact or performance.  *See, e.g., Mat-Van* 2008, 2008 U.S. Dist. LEXIS 8724,

22   at *8; *Sanguinetti*, 1996 U.S. Dist. LEXIS 1219, at *48-49.  By way of comparison, Plaintiff does

23   not allege, for example, that Glimmerglass made a false factual representation regarding its lack

24   of subsidiaries or material liabilities; such statements would be as to present and verifiable *facts*

25   that could arguably be encompassed by the fraud exception.  Instead, the misrepresentations

26

27

[8] It is further precluded from stating a colorable claim because, "Under plaintiff's logic, every breach of contract could 'support a claim of fraud so long as the plaintiff adds to his complaint a general allegation that the defendant never intended to keep her promise.'"  *Mat-Van*, 2007, 2007

28   U.S. Dist. LEXIS 54876, at *20 (dismissing claim).

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

1   alleged speak only to future performance of promises to provide exclusivity or perform various

2   contractual terms—inadmissible to state a claim for fraud because the Agreements are integrated.

3   *Id*.  Plaintiff's First and Second Causes of Action should accordingly be dismissed.  *Id*.

**B.    Plaintiff Fails to Identify the Allegedly False Representations With Sufficient Particularity Under Rule 9(b).**

6       Plaintiff's First and Second Causes of Action also fail because Plaintiff has not pleaded

7   the misrepresentations with particularity as required by the heightened pleading standards of Rule

8   9(b).  Fed. R. Civ. P. 9(b)[9]; *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003);

9   *Neilson v. Union Bank of Cal., N.A.,* 290 F. Supp. 2d 1101, 1141 (C.D. Cal. 2003) ("It is well-

10  established in the Ninth Circuit that both claims for fraud and negligent misrepresentation must

11  meet Fed. R. Civ. P. 9(b) . . ."); *see also Applied Elastomerics, Inc. v. Z-Man Fishing Prods*., No.

12  C 06-2469, 2007 U.S. Dist. LEXIS 19211 (N.D. Cal. Mar. 5, 2007) (citing rule; dismissing

13  negligent misrepresentation claim).  The pleading must be "specific enough to give defendants

14  notice of the particular misconduct . . . so that they can defend against the charge and not just

15  deny that they have done anything wrong."  *Vess*, 317 F.3d at 1106 (internal quotation omitted).

16  Specifically, when fraud is alleged against a corporation, the plaintiff must identify "the names of

17  the persons who made the allegedly fraudulent representations, their authority to speak, to whom

18  they spoke, what they said or wrote, and when it was said or written."  *See, e.g., Wang & Wang,*

19  *LLP v. Banco Do Brasil, S.A.,* No. Civ. S-06-00761 DFL KJM, 2007 U.S. Dist. LEXIS 25813, at

20  *4 (E.D. Cal. Mar. 26, 2007) (granting motion to dismiss for lack of specificity).

21      Such specificity is particularly important in the context where, as here, misrepresentations

22  are alleged to have been made by a corporation, since corporations can only act through their

23  agents.  Another decision on a motion to dismiss in the *Mat-Van* matter is instructive on that

24  point.  *See Mat-Van* 2007, 2007 U.S. Dist. LEXIS 54876, at *18-19.  In dismissing a fraud cause

25  of action for failing to satisfy the requirements of Rule 9(b), the *Mat-Van* 2007 held that:

26      Corporations speak through agents and, therefore plaintiffs must identify the agent who

27  [9] In diversity cases such as the instant case, the substantive elements of fraud are determined by

28  state law but the complaint must conform with the requirements of Federal Rules of Civil Procedure 9(b).  *Vess,* 317 F.3d at 1106.

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

<u>made the fraudulent statement, their authority to speak, and to whom the agent spoke</u>. General allegations that a corporation committed fraud, such as here, are insufficient under Rule 9(b)'s pleading requirement.  Plaintiffs' allegations do not place defendants on notice as to who in their organizations may have made the statements <u>or to whom the statements were made</u>. [Citations.]

*Id.* at *17-18 (emphasis added); *see also Wang*, 2007 U.S. Dist. LEXIS 25813, at *4.

In some cases of alleged corporate fraud, plaintiffs will not have personal knowledge of all the underlying facts, but "the allegations should include the misrepresentations themselves with particularity and, where possible, the roles of the individual defendants in the misrepresentations."  *Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 540 (9th Cir. 1989) (dismissing fraud claim for lack of specificity, including failing to identify content, date, or author of prospectus) (superseded on other grounds).  Yet, the present scenario alleged by Plaintiff is not even one in which the standards should be relaxed at all, since the allegedly false statements made, and the circumstances thereof, are *necessarily* known to Plaintiff.

*Wang* is on point.  Plaintiff's complaint was deficient because it (1) was vague about who made the allegedly false statements, (2) failed to tie particular misrepresentations to particular speakers ("The problem is that Wang does not specify who said this."), and (3) was vague about the timing of defendants alleged misrepresentations ("The complaint alleges that Banco's misrepresentations were made 'in numerous telephone discussions . . . commencing in December, 2001, and repeated periodically'" which "do[es] not make the grade under Rule 9(b).")  2007 U.S. Dist. LEXIS 25813, at *4-5.  Importantly, the court rejected the argument that, since defendant had equal knowledge of the alleged misrepresentations, a lesser pleading standard should apply. *Id.* at *6-7.  As the court explained, "<u>[t]here is no excuse for Wang's failure to plead with particularity the details of conversations to which it was a party.</u>" *Id.* (emphasis added).

Here, Plaintiff has made no effort to identify *any* circumstances of the alleged fraud.  All Plaintiff asserts is that "Glimmerglass induced Terilogy to invest . . .with the false promise that Terilogy would have exclusive distribution rights in Japan," and that the representations "that among other things Glimmerglass intended to use its best efforts to grant Terilogy exclusive distribution rights" were "false when Glimmerglass made them."  Complaint ¶¶ 17, 19.  Such

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

1    allegations fall well short of the already-deficient claims in *Mat-Van* 2007, *Moore*, and *Wang*.

2        First, Plaintiff does not assert *who* made the alleged representations.  Was it a

3    Glimmerglass officer?  A Glimmerglass sales person?  Glimmerglass is prevented from

4    understanding whether it can even arguably be bound by the unspecified representation if Plaintiff

5    does not allege who at Glimmerglass made it and to whom at Terilogy it was made.  *What* were

6    the contents of the representation?  What did the individual at Glimmerglass purportedly state,

7    precisely?  Did some identified person literally promise "exclusivity" even though the DA, itself,

8    is subject to multiple carve-outs?  *Where* did these alleged representations occur, and in what

9    context?  During meetings about the Parties' Agreements?  During social functions?  *When* were

10   these statements purportedly made?  During early contract negotiations?  During more advanced

11   negotiations?  Or, after the Agreements were already signed?  In the total absence of *any*

12   identifying information regarding the alleged representations and the circumstances in which they

13   were made, Glimmerglass is prevented from understanding the claim and its own defenses, and

14   plaintiff's deceit-based claims are properly dismissed.  *See, e.g., Vess*, 317 F.3d at 1105.

15   ## VI.    PLAINTIFF'S CLAIM FOR "MISTAKE – RESCISSION" FAILS AS A MATTER OF LAW AND SHOULD BE DISMISSED WITHOUT LEAVE TO AMEND.

16

17       Plaintiff attempts to rescind three distinct Agreements, each with independent

18   consideration, on the basis of a purported "mistake of fact" regarding a single term in just one of

19   them, the "OEM Sale" term in the DA.  The Complaint alleges that:

20   • "Terilogy and Glimmerglass entered into the Stock Purchase Agreements and the
21   Distribution Agreement without achieving a meeting of the minds on the crucial
     terms in those agreements." (¶ 37)

22   • "After executing the agreements, there was a disagreement as to what constituted
23   an OEM sale . . .It was thus clear that the parties had never, in fact, understood
     this point or reached an agreement about it."  (¶ 40) (emphasis added)

24   • "This failure to reach an understanding on the definition of an OEM evidences a
25   mutual mistake of fact." (¶ 41)

26   • As a result of Terilogy and/or Glimmerglass' mistake of fact with respect to a
27   material terms [sic] in the Stock Purchase Agreements and the Distribution
     Agreement, Terilogy requests that the Court rescind the Stock Purchase
     Agreements and restore Terilogy's investment of approximately $1.136 million.
     (¶ 44)

28

1    These assertions are insufficient on multiple grounds to state a claim for rescission of the DA, let

2    alone the First SPA and Second SPA as to which *no* factual allegations of "mistake" are made.

3    ## A.    <u>Plaintiff's Rescission Claim Fails Rule 9(b)'s Heightened Pleading Standard.</u>

4    First, as with their fraud-based claims discussed above, Plaintiff fails to satisfy Rule 9(b)'s

5    requirements that it "state with particularity the circumstances constituting fraud or mistake." *See*

6    *Bradley v. Chiron Corp.*, 136 F.3d 1317, 1322 (Fed. Cir. 1998) (applying California law;

7    affirming dismissal of rescission claims).  That such particularity is required for claims of

8    "mistake" evidences the long-disfavored nature of rescission claims.  The historic and equitable

9    underpinnings of Rule 9(b) were extensively analyzed in *Breeden v. Richmond Cmty. Coll.*, 171

10   F.R.D. 189, 201-202 (M.D.N.C. 1997), which noted that since the times of the chancery courts in

11   England, the remedy of rescission has conflicted with the law's careful preservation of "written

12   agreements or other instruments recognized as memorials of a transaction."  *Id.* at 201.

13   In order to meet the heightened pleading standard of Rule 9(b), Plaintiff would have to

14   allege "<u>the 'who, what, where, when and how' of the mistake</u>."  2 *Moore's Federal Practice*, §

15   9.03[2] (Matthew Bender 3d ed. 2008) (emphasis added); *quoted by Applied Elastomerics*, 2007

16   U.S. Dist. LEXIS 19211, at *16-17  (denying leave to amend mistake-based rescission claim

17   could not be plead with particularity).  As Judge Wilken explained in *Applied Elastomerics,* a

18   "good averment of mistake should include: 1. the act or writing intended; 2. the act or writing

19   done; 3. the cause of the mistake; and 4. whether the mistake was mutual, unilateral, or merely

20   that of a scrivener."  *Id.*

21   Here, as to the First SPA and Second SPA, the utter failure of the mistake claim is readily

22   apparent:  Plaintiff alleges <u>no factual allegations of mistake whatsoever</u>.  The at-issue "OEM

23   Sale" term appears only in the DA, and Plaintiff fails to identify any term in the First and Second

24   SPAs as to which there could possibly be a mistake.  Indeed, the sole allegations that there was

25   *any* "mistake" in the formation of the First and Second SPAs are the bare conclusions that,

26   "Terilogy and Glimmerglass entered into the Stock Purchase Agreements . . . without achieving a

27   meeting of the minds on the crucial terms," (Complaint ¶ 37) and that, "As a result of Terilogy

28   and/or Glimmerglass' mistake of fact with respect to a material terms [sic] in the Stock Purchase

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

1   Agreements . . . Terilogy requests that the Court rescind the Stock Purchase Agreements."

2   (Complaint ¶ 44.)  Such conclusory assertions, completely devoid of fact, are insufficient to

3   satisfy Rule 8(a)'s pleading requirements, let alone Rule 9(b)'s. *Bell Atl. Corp.*, 127 S. Ct. at

4   1969; *Epstein*, 83 F.3d at 1140; *Applied Elastomerics*, 2007 U.S. Dist. LEXIS 19211, at *17.

5          Plaintiff fares no better with the DA.  Plaintiff asserts the bare conclusion there was a

6   mistaken interpretation of what constituted an "OEM Sale" (Complaint ¶¶ 40-42), but no other

7   details surrounding the entry into such mistake or any facts supporting its existence.  As set forth

8   in *Applied Elastomerics*, critical pleading questions are left unanswered:  What did each party

9   intend "OEM Sale" to mean in entering into the DA?  What did each party understand "OEM

10  Sale" to mean once embodied in the DA?  Indeed, the Complaint does not explain even in the

11  most general terms what the competing interpretations of the OEM term purportedly were.  Nor is

12  there any identification of what caused the similarly-unidentified gap in understanding.  As a

13  result, neither Glimmerglass nor the Court are on notice as to the basis of Plaintiff's claim of

14  "mistake"—much less on notice of the particulars of "who, what, where, when, and how"

15  surrounding it.  *See Applied Elastomerics,* 2007 U.S. Dist. LEXIS 19211, at *17; *Bradley*, 136

16  F.3d at 1322; *Reed v. Turner*, No. 1439,  U.S. Dist. LEXIS 2075, at *2 (E.D. Pa. July 10, 1941)

17  (dismissing mistake-based claim for failure to comply with Rule 9(b)).

18         In the absence of any fact-based allegations of mistake, and only conclusory assertions,

19  there is no justifiable basis upon which to permit Plaintiff to wiggle out the Agreements' terms,

20  and its claim requires dismissal.  *Applied Elastomerics,* 2007 U.S. Dist. LEXIS 19211, at *17.[10]

21  **B.      The DA Cannot Be Rescinded as the Mistake Alleged Amounts Only to a**

22  **Unilateral Mistake of Law, Which Cannot Justify Rescission.**

23         There is an additional reason that Plaintiff's claim for rescission of the DA (or the SPAs,

24  to which Plaintiff now apparently wants the "OEM Sale" term incorporated) is doomed as a

25  matter of law.  This is because an alleged disagreement over the meaning of the OEM Sale term is

26  _____

27  [10] It is not surprising that Plaintiff has tried to sweep the First and Second SPAs into its "mistake"
    claim even though mistake is not asserted as to any provisions therein.  This is because the SPAs

28  are the only Agreements for which Plaintiff paid any money to Defendant to enter into, and thus
    for which it could now attempt to seek the return of its investment.

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

1    actually not a claim for "mistake of fact," but rather one for a unilateral mistake of law which,

2    when premised on a disagreement over contract interpretation, cannot form a basis for rescission.

3    *Hedging Concepts, Inc. v. First Alliance Mortgage Co.*, 41 Cal. App. 4th 1410, 1421 (1996).

4         Civil Code Section 1689(b)(1) states that "[a] party to a contract may rescind the

5    contract… [i]f the consent of the party rescinding, or of any party jointly contracting with him,

6    was given by mistake." Cal. Civ. Code § 1689(b)(1). There are two types of mistake which can

7    form grounds for a rescission. A <u>mistake of fact</u> occurs when a party has either "[a]n unconscious

8    ignorance or forgetfulness of a [material] fact past or present . . . or, [a] [b]elief in the present

9    existence of a thing material to the contract, which does not exist, or the past existence of such a

10   thing, which has not existed." Cal. Civ. Code § 1577. On the other hand,  a <u>mistake of law</u> exists

11   "only when 1) all parties think they know and understand the law but all are mistaken in the same

12   way, or 2) when one side misunderstands the law at the time of contract and the other side knows

13   it, but does not rectify that misunderstanding." *Hedging Concepts*, 41 Cal. App. 4th at 1421; *see*

14   *also In re Marriage of Mansell*, 217 Cal. App. 3d 219, 234 (1989); Cal. Civ. Code § 1578.

15        It is settled that mistake as to the interpretation or meaning of a contractual term amounts

16   to mistake of law, not of fact. *See Applied Elastomerics,* 2007 U.S. Dist. LEXIS 19211, at *17-

17   18 (dismissing rescission claim in part because the alleged mistake was of contract interpretation,

18   and not fact). In turn, parties can seek rescission based on such mistaken interpretation only if

19   they have <u>the same mistaken understanding</u> of that contractual term. *Hedging Concepts,* 41 Cal.

20   App. 4th at 1420-22. Conversely, where parties have differing subjective interpretations of a

21   provision, their mistake is a <u>unilateral "mistake of law,"</u> and rescission is unavailable. *Id.*

22        Although Plaintiff's claim is styled as one of "mutual mistake of fact," Plaintiff has

23   actually alleged mistaken interpretations of a contractual term—here, the definition of an OEM

24   sale (Complaint ¶¶ 37, 40-42)—which constitutes an alleged <u>mistake of law</u>, not of fact.[11]  *See*

---

[11] Even were the Court to construe a purported mistake regarding the effect of the OEM term as
one of fact, Plaintiff's claim still fails. The Complaint asserts differing subjective intents as to
how the OEM term should be interpreted. Complaint ¶ 40. "A party's mistake as to the other
party's subjective intent is, in itself, not a ground for rescission." *Welles v. Acad. of Motion*
*Picture Arts & Scis.*, No. CV 03-05314 DDP (JTLx), 2004 U.S. Dist. LEXIS 5756, at *11 (C.D.
Cal. Mar. 4, 2004); *see also Bradley*, 136 F.3d at 1323 (failure to understand the terms of an
agreement was an insufficient allegation of a mistake of  fact under Civil Code section 1577).

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

1   *Applied Elastomerics,* 2007 U.S. Dist. LEXIS 19211, at *17-18.  Because Plaintiff avers that the

2   Parties had different misunderstandings of that OEM term (Complaint ¶ 40), Plaintiff's alleged

3   mistake of law is also <u>unilateral</u>, and thus cannot provide grounds for rescission as a matter of

4   law.  *Hedging Concepts,* 41 Cal. App. 4th at 1420-22.  The fact that Plaintiff claims to be

5   mistaken in their belief about what a term provided does not justify release from the DA, or any

6   of the Agreements.  *See Kucharczyk v. The Regents of the Univ. of Cal.*, 946 F. Supp. 1419, 1433

7   (N.D. Cal. 1996) ("A party is bound, even if he misunderstood the terms of a contract and

8   actually had a different, undisclosed intention . . .The fact that plaintiffs were 'simply mistaken'

9   in their belief that the contract contained a royalty requirement does not serve to release them

10  from their contract").  Plaintiff's claim for relief should accordingly be dismissed .  *See Applied*

11  *Elastomerics*, 2007 U.S. Dist. LEXIS 19211, at *17-18; *Bradley*, 136 F.3d at 1323**.**

12  **VII.    PLAINTIFF'S CLAIM FOR UNJUST ENRICHMENT FAILS AS A MATTER OF**

13  **LAW AND SHOULD BE DISMISSED WITHOUT LEAVE TO AMEND**.

14      California does not recognize "unjust enrichment" as a cause of action.  *Melchior v. New*

15  *Line Prods., Inc.,* 106 Cal. App. 4th 779, 794 (2003).  "Rather, unjust enrichment is a basis for

16  obtaining restitution based on quasi-contract or imposition of a constructive trust.'" *Roots Ready*,

17  2008 U.S. Dist. LEXIS 9191, at *20-21.  Because it is not a stand-alone claim, it is appropriately

18  disposed of *without* leave to amend.  *See, e.g., Id.*; *Walker v. USAA Cas. Ins. Co.*, 474 F. Supp. 2d

19  1168, 1174 (E.D. Cal. 2007) (same); *see also Creager v. Yoshimoto*, No. C 05-01985 JSW, 2007

20  U.S. Dist. LEXIS 77309, at *13-14 (N.D. Cal. Oct. 9, 2007) (granting summary judgment).

21      While a few California courts have found that unjust enrichment can stand independently

22  (*see, e.g, Lectrodryer v. Seoul Bank*, 77 Cal. App. 4th 723 (Cal. Ct. App. 2000)), the apparent

23  inconsistency can be reconciled with the prevailing rule.  As explained in *Vincent Consol.*

24  *Commodities, Inc. v. Am. Trading & Transfer, LLC*, No. 07-CV-20 W (LSP), 2007 U.S. Dist.

25  LEXIS 53680, at *8 (S.D. Cal. July 24, 2007), such courts may have focused on a remark by the

26  California Supreme Court in *Ghirardo v. Antonioli*, 14 Cal. 4th 39, 51-52 (1996), "made by the

27  court in passing while discussing the remedy of restitution."  The California Supreme Court

28  simply observed that, "[u]nder the law of restitution, an individual may be required to make

1   restitution if he is unjustly enriched at the expense of another." 2007 U.S. Dist. LEXIS 53680, at

2   *8. But *Ghirardo* did not establish a separate cause of action for unjust enrichment, as restitution

3   can simply be requested in the prayer for relief. *Id.* Because no set of facts can support an

4   unrecognized claim, the unjust enrichment claim was dismissed with prejudice. *Id.*

5       Even were this settled-rule set aside for the sake of argument, Plaintiff's unjust

6   enrichment claim still fails as a matter of law: The unjust enrichment allegations cannot be

7   detached from their underpinnings, and the fraud claims upon which they are based fail. In

8   *Oestreicher v. Alienware Corp.*, 544 F. Supp. 2d 964, 975 (N.D. Cal. 2008), because the unjust

9   enrichment cause of action was premised upon alleged misrepresentations and unfair competition

10  which plaintiff had failed to adequately plead, the unjust enrichment claim necessarily failed, too.

11  *Id; see also In re Late Fee & Over-Limit Litig.*, 528 F. Supp. 2d 953, 966-67 (N.D. Cal 2007)

12  ("Moreover, the plaintiffs' claim of 'unjust enrichment' does not allege any distinct purported

13  impropriety, but depends entirely on the allegation that the defendants benefitted from actions

14  that are unlawful under other theories of liability in their complaint. Accordingly, this claim must

15  necessarily be dismissed when the other claims are dismissed.").

16      Here, too, Plaintiff's unjust enrichment claim is premised upon its insufficient allegations

17  of promissory fraud. ¶ 46 ("Glimmerglass was improperly enriched" because "Glimmerglass

18  never intended to grant exclusive distribution rights to Terilogy"); ("Terilogy invested in

19  Glimmerglass with the sole expectation that Glimmerglass would make all reasonable efforts to

20  cancel existing distribution contracts. . ."). Because the fraud claims upon which Plaintiff's

21  unjust enrichment allegation depend themselves fail to state a claim (*see* Section V, *supra*) so too

22  does unjust enrichment, which should accordingly be dismissed.

23                              **<u>CONCLUSION</u>**

24      For all of the foregoing reasons, Glimmerglass respectfully requests that the Court grant

25  its Motion to Dismiss in its entirety.

    Dated: August 22, 2008

26                          By:_____/s/ Rodger R. Cole_____
                                          Rodger R. Cole

27                          Attorneys for Defendant
                            GLIMMERGLASS NETWORKS, INC.

28

Fenwick & West LLP
Attorneys At Law
Mountain View