United States District Court

For the Northern District of California

1

2

3

4

5          UNITED STATES DISTRICT COURT

6          NORTHERN DISTRICT OF CALIFORNIA

7

8   TERILOGY CO., LTD.,                           No. C-08-3364 EMC

9          Plaintiff,

                                                  **ORDER GRANTING DEFENDANT'S**
10      v.                                        **MOTION TO DISMISS**

11  GILLMERGLASS NETWORKS, INC.,                  **(Docket No. 12)**

12         Defendant.
    _____/
13

14

15         Plaintiff Terilogy Co., Ltd. has sued Defendant Glimmerglass Networks, Inc. for, *inter alia*,

16  fraud and rescission of contract.  Currently pending before the Court is Glimmerglass's motion to

17  dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).  Having considered the parties' briefs

18  and accompanying submissions, as well as the oral argument of counsel, the Court hereby **GRANTS**

19  Glimmerglass's motion.

20                **I.   FACTUAL & PROCEDURAL BACKGROUND**

21         In its complaint, Terilogy alleges as follows.

22         Terilogy is a Japanese corporation that provides "service assurance software solutions

23  [which] help both service providers improve and enterprises achieve better returns from their

24  complex IT infrastructures.  Terilogy markets primarily to telecommunications companies and

25  Internet Service Providers . . . ."  Compl. ¶ 1.  Glimmerglass is a Delaware corporation that

26  "develops and markets Intelligent Optical switching solutions for the telecommunications industry

27  and governments."  Compl. ¶ 2.

28

**United States District Court**
For the Northern District of California

1    In 2005, Terilogy "sought to enter into an exclusive distribution agreement with

2  Glimmerglass for its products in Japan."  Compl. ¶ 6.  Glimmerglass proposed that "Terilogy invest

3  in Glimmerglass in return for exclusive distribution . . . ."  Compl. ¶ 6.  Several meetings thereafter

4  took place in which Terilogy "made clear that its intent was to exchange its investment in

5  Glimmerglass for an exclusive distribution agreement."  Compl. ¶ 7.  Subsequently, on February 9,

6  2006, the parties entered into two different agreements: (1) a Stock Purchase Agreement ("First

7  SPA") and (2) a Distribution Agreement ("DA").  *See* Compl. ¶ 7.

8    Under the First SPA, Terilogy purchased more than 2 million Glimmerglass shares for $1

9  million.  *See* Compl. ¶ 8; *see also* Compl., Ex. A (First SPA ¶ 1.2 & Ex. A) (Schedule of

10  Purchasers).

11    Under the DA, Glimmerglass appointed Terilogy "as an independent, Sole Master

12  Distributor of Products in the territory and for those certain vertical markets specified in Exhibit B

13  ('Territory'), subject to existing third party rights and the rights reserved below."  DA ¶ 1.1.  The

14  DA noted that Glimmerglass "currently has one existing reseller in the territory" and that

15  Glimmerglass "will use reasonable efforts to lawfully terminate or modify this contractual

16  relationship within a reasonable time to ensure [Terilogy's] 'master' status pursuant to this

17  Agreement."  DA ¶ 1.1.  The DA also made an exception to the exclusive distribution agreement for

18  OEM's.  *See* DA ¶ 1.2 ("[Terilogy] will distribute Products to end users and resellers located in the

19  Territory in connection with the distribution of its offerings (excluding OEMs -- as defined below).

20  [Terilogy] will have the exclusive responsibility to engage and manage resellers in the Territory and

21  the non exclusive responsibility in vertical markets other than those certain vertical markets

22  specified in Exhibit B.  [Terilogy] will not have exclusive responsibility for OEM's, (that is,

23  purchasers of Products who incorporate the Products into a substantially different product for resale

24  -- 'OEMs').").

25    While the DA did not make any mention of the First SPA, the Schedule of Exceptions for the

26  First SPA, which Glimmerglass provided to Terilogy, *see* First SPA ¶¶ 3, 3.7, noted that the parties

27  "intend to negotiate a distribution agreement for Terilogy to sell the Company's products in Japan.

28

United States District Court

For the Northern District of California

As part of the relationship, it would be expected that Terilogy would invest $1 million in the Company's Series B-1 financing."  Compl., Ex. C (First Schedule of Exceptions ¶ 3.7(b)(i)).

A few months after the First SPA and DA were signed, the parties entered into a second Stock Purchase Agreement ("Second SPA").  *See* Compl. ¶ 10.  Under the Second SPA, Terilogy purchased almost 300,000 shares for more than $100,000.  *See* Compl. ¶ 10.  Like the Schedule of Exceptions for the First SPA, the Schedule of Exceptions for the Second SPA, which Glimmerglass provided to Terilogy, *see* Second SPA ¶¶ 3, 3.7, made reference to the DA, stating that the parties had "signed a distribution agreement for Terilogy to sell [Glimmerglass's] products in Japan. Terilogy also invested $1 million in Glimmerglass' Series B1 Preferred Stock."  Compl., Ex. E (Second Schedule of Exceptions ¶ 3.7(b)(i)).

Soon after the second SPA was signed, "Terilogy learned that Glimmerglass failed to make the requisite efforts to terminate [its] distribution agreement with Nissho [a third party]," as required by the DA -- and "was in fact negotiating a new agreement with Nissho to distribute Glimmerglass'[s] products in Japan."  Compl. ¶ 11.  Glimmerglass claimed that "the agreement with Nissho fell within the Original Equipment Manufacturer ('OEM') exception to the [DA]."  Compl. ¶ 12.

In September 2006, "[t]he parties negotiated an addendum to the [DA], which was intended to provide greater clarity to the OEM issue.  The proposed addendum explicitly stated that all distribution agreements with Nissho must be limited to OEM's.  Then, after negotiating mutually acceptable terms, Glimmerglass refused to sign the [addendum]."  Compl. ¶ 15.

On January 23, 2007, Glimmerglass terminated the DA pursuant to ¶ 6.2 of the agreement. *See* Compl. ¶ 16; *see also* DA ¶ 6.2 ("Either party may terminate this Agreement for any reason or for no reason by giving at least ninety days prior written termination notice to the other party."). According to Terilogy, "it is clear now that Glimmerglass had no intention of ever actually providing Terilogy with the exclusive distributor status in Japan that both parties knew was the fundamental basis for Terilogy's substantial investment in Glimmerglass."  Compl. ¶ 16.

Based on the above allegations, Terilogy asserts the following causes of action: (1) fraud, (2) negligent misrepresentation, (3) breach of the covenant of good faith and fair dealing, (4) rescission

1   of contract based on mistake, and (5) unjust enrichment.  *See* Docket No. 1 (complaint).  In the

2   currently pending motion to dismiss, Glimmerglass contends that all of the causes of action, except

3   that for breach of the covenant of good faith and fair dealing, should be dismissed.

## II.   DISCUSSION

A.   Legal Standard

Rule 12(b)(6) provides that a motion to dismiss may be made on the basis that the plaintiff

has failed to state a claim upon which relief may be granted.  *See* Fed. R. Civ. P. 12(b)(6).  "To

avoid a Rule 12(b)(6) dismissal, a complaint need not contain detailed factual allegations; rather, it

must plead 'enough facts to state a claim to relief that is plausible on its face.'"  *Weber v.*

*Department of Veterans Affairs*, 521 F.3d 1061, 1065 (9th Cir. 2008) (quoting *Bell Atlantic Corp. v.*

*Twombly*, 127 S. Ct. 1955, 1974 (2007)).

Under Rule 9(b), however, "[i]n alleging fraud or mistake, a party must state with

particularity the circumstances constituting fraud or mistake.  Malice, intent, knowledge, and other

conditions of a person's mind may be alleged generally."  Fed. R. Civ. P. 9(b).

B.   Fraud

In its complaint, Terilogy alleges that Glimmerglass committed fraud because, *inter alia*, its

representation that it would use its best efforts to grant Terilogy exclusive distribution rights in

Japan was false.  *See* Compl. ¶ 19.  According to Terilogy, Glimmerglass made the false

representation "to induce Terilogy into purchasing Glimmerglass'[s] Series B1 Shares."  Compl. ¶

21.  In its motion to dismiss, Glimmerglass contends that Terilogy has failed to state a claim for

fraud because evidence about any such representation is extrinsic evidence that would be barred by

the parol evidence rule.  Glimmerglass further argues that the false representation has not been pled

with sufficient particularity as required by Rule 9(b).

1.   Parol Evidence Rule

California's parol evidence rule is contained in California Code of Civil Procedure § 1856.

The relevant parts of the statute are as follows:

(a)   Terms set forth in a writing intended by the parties as a final
expression of their agreement with respect to such terms as are

United States District Court
For the Northern District of California

United States District Court

For the Northern District of California

included therein may not be contradicted by evidence of any prior agreement or of a contemporaneous oral agreement.

(b)    The terms set forth in a writing described in subdivision (a) may be explained or supplemented by evidence of consistent additional terms unless the writing is intended also as a complete and exclusive statement of the terms of the agreement.

. . . .

(g)    This section does not exclude other evidence of the circumstances under which the agreement was made or to which it relates, as defined in Section 1860, or to explain an extrinsic ambiguity or otherwise interpret the terms of the agreement, or to establish illegality or fraud.

Cal. Code Civ. Proc. § 1856.

a.    Integrated Contracts

Given the above, the first question for the Court is whether the SPAs and DA were intended by the parties as final and complete expressions of their agreements -- *i.e.*, whether the SPAs and DA were integrated contracts. *See id.* § 1856(d) ("The court shall determine whether the writing is intended by the parties as a final expression of their agreement with respect to such terms as are included therein and whether the writing is intended also as a complete and exclusive statement of the terms of the agreement."); *Alling v. Universal Mfg. Corp.*, 5 Cal. App. 4th 1412, 1434 (1992) ("The determination of whether the agreement in question is an 'integration' -- that is, whether it was intended by the parties as a final, complete and exclusive statement of their agreement with respect to the terms included in the agreement -- is a question of law to be determined by the court.").

Both the first SPA and the second SPA contain the following provision:

This Agreement, the Exhibits and Schedules hereto, and the other documents delivered pursuant hereto constitute the full and entire understanding and agreement between the parties with regard to the subjects hereof and no party shall be liable or bound to any other in any manner by any representations, warranties, covenants and agreements except as specifically set forth herein and therein.

First SPA ¶ 6.4; Second SPA ¶ 6.4. The DA contains a similar provision:

5

1

2

3

> This Agreement, including all exhibits hereto, constitutes the entire and exclusive agreement between the parties relating to its subject matter and supersedes all prior or contemporaneous representations, discussions, negotiations, and agreements, whether written or oral, relating to its subject matter.

4   DA ¶ 10.11.

5       Based on case law, it is clear that these provisions made both the SPAs and the DA

6   integrated contracts. *See, e.g.*, *Alling*, 5 Cal. App. 4th at 1435 (agreeing with lower court that

7   contract was an integrated one based on provision that stated that "'this Agreement sets forth the

8   entire understanding of the parties and supersedes all prior agreements and understandings of the

9   parties relating to the subject matter hereof'" and that "'[t]his Agreement may be modified or

10  terminated only in a writing signed by all of the parties'"); *Banco Do Brasil v. Latian*, 234 Cal. App.

11  3d 973, 1003 (1991) (concluding that agreement was an integrated contract based on provision

12  which stated that the agreement "'embodies the entire agreement and understanding among the

13  parties hereto and supersedes all prior agreements and understandings relating to the subject matter

14  hereof'").

15      Because the SPAs and DA are integrated contracts, the parol evidence rule bars evidence of

16  any contradictory prior agreement or contemporaneous oral agreement, *see* Cal. Code Civ. Proc. §

17  1856(a), and further bars evidence of any consistent additional terms, *see id.* § 1856(b), unless one

18  of the exceptions identified in § 1865(g) is applicable – for example, the exception for fraud. *See id.*

19  § 1856(g).

20              b.    Theories of Fraud

21      Having determined the above, the Court must now look at the actual fraud claim alleged by

22  Terilogy to determine whether the parol evidence rule would in fact be a bar, as asserted by

23  Glimmerglass.  There are two aspects of Terilogy's fraud claim:

24  (1)     In the DA, Glimmerglass promised to use its best efforts to grant Terilogy exclusive

25          distribution rights but Glimmerglass never had any intention of doing so -- *i.e.*,

26          Glimmerglass never intended to perform an express contractual covenant.

27

28

**United States District Court**
For the Northern District of California

(2) To get Terilogy to enter into the SPAs, Glimmerglass promised that it would give Terilogy exclusive distribution rights -- *i.e.*, Glimmerglass fraudulently induced Terilogy to sign the SPAs.

Under either theory, the parol evidence rule is not a bar to the fraud claim.

c. <u>Misrepresentation re Intent to Perform DA</u>

Under the first fraud theory, the parol evidence rule cannot be a bar because the rule bars only evidence of a contradictory agreement or evidence of consistent, additional terms. Glimmerglass's alleged misrepresentation that it would give Terilogy exclusive distribution rights is not evidence of a contradictory agreement or evidence of a consistent, additional term because that is precisely what Glimmerglass promised under the DA.  *See American Trim, L.L.C. v. Oracle Corp.*, 383 F 3d 462, 472 (6th Cir. 2004) (stating that "the parol evidence rule does not apply here because [plaintiff's] false promise claim is based on [defendant] Oracle's promises, contained in the agreement itself, to deliver Oracle Automotive").

In a footnote, Glimmerglass implicitly acknowledges that the parol evidence rule is not applicable to the extent Terilogy is making a claim that Glimmerglass "lacked intention to perform an *express contractual covenant* (such as the DA's provision regarding the use of 'reasonable efforts' to bestow 'Sole Master Distributor' status)."  Mot. at 9 n.5 (emphasis in original).  But, according to Glimmerglass, even under this theory the fraud claim should fail because, "if such allegations were permitted, every breach of contract claim could be converted to fraud, since a party could *always* assert it was 'induced' into the agreement based on the other party's 'promise' to perform it, or by a simple allegation that the other party never intended to perform the agreement."  Mot. at 9 n.5 (emphasis in original).  While this argument is not without some merit, it is answered by the requirement that bare allegations unsupported by facts will not suffice.  In this regard, the cases on which Glimmerglass relies to support its contention -- *i.e.*, *Mat-Van, Inc. v. Sheldon Good & Co. Auctions, LLC*, No. 07-CV-912 - IEG (BLM), 2007 U.S. Dist. LEXIS 54876 (S.D. Cal. July 27, 2007), and *Price v. Wells Fargo Bank*, 213 Cal. App. 3d 465 (1989) -- are not availing.

In *Mat-Van* (2007), the court's focus was whether plaintiffs' fraud claim met the requirements of Rule 9(b).  The court's concern was that

7

United States District Court

For the Northern District of California

plaintiffs' factual allegations fail to demonstrate that defendants did not have an intention to keep promises at the time they was made. "Although intent can be averred generally under Rule 9(b), a plaintiff must point to facts which show that defendant harbored an intention not to be bound by terms of the contract at formation." In the instant case, the only allegations in the complaint that could demonstrate defendants' fraudulent intent are claims that defendant ultimately did not perform the material terms of the contract. Plaintiffs' reliance on nonperformance as circumstantial evidence of defendants' fraudulent intent at the time of contract formation is misplaced. For promissory fraud claims, plaintiffs cannot rest on allegations that defendants breached the contract but must plead the existence of other facts that create a reasonable inference of deceptive intent at the time the statements were originally made. Under plaintiffs' logic, every breach of contract could "support a claim of fraud so long as the plaintiff adds to his complaint a general allegation that the defendant never intended to keep her promise." Contrary to plaintiffs' argument, conclusory statements that defendants never intended to perform are insufficient without further factual allegations that establish contemporaneous falsity.

*Id.* at *18-21.

*Mat-Van* (2007) is distinguishable from the instant case because, here, Terilogy has alleged more than just nonperformance of the DA as evidence of Glimmerglass's lack of intention to perform the DA at the outset. For example, Terilogy alleges that Glimmerglass not only "failed to make the requisite efforts to terminate [its] distribution with Nissho" (nonperformance) but also was actively "negotiating a new agreement with Nissho to distribute Glimmerglass'[s] products in Japan." Compl. ¶ 11. Also, Terilogy alleges that, even though Glimmerglass claimed that its agreement with Nissho fell within the OEM exception to the DA, Glimmerglass refused to sign an addendum to the DA -- negotiated by both it and Terilogy -- which "explicitly stated that all distribution agreements with Nissho must be limited to OEM's." Compl. ¶ 15. Under California law, evidence of immediate subsequent conduct may be sufficient to prove the original lack of intention.[1] *See* 5 Witkin, Summ. of Cal. Law, Torts § 782. *See, e.g.*, *Diamond Woodworks v. Argonaut Ins. Co.*, 109 Cal. App. 4th 1020, 1046-47 (2003) (noting that leasing company impliedly

---

[1] Fraudulent intent may also be "inferred from such circumstances as defendant's insolvency, his hasty repudiation of the promise, his failure even to attempt performance, or his continued assurances after it was clear he would not perform. However, if plaintiff adduces no further evidence of fraudulent intent than proof of nonperformance of an oral promise, he will never reach a jury." *Tenzer v. Superscope*, 39 Cal. 3d 18, 30-31 (1985).

**United States District Court**
For the Northern District of California

1   promised plaintiff that all of its new hires were leasing company employees from the first day and

2   thus covered by worker's compensation; concluding that leasing company's "unhesitating rejection"

3   of worker's claim for benefits because of lack of an employment packet "constituted substantial

4   evidence for the jury to find [that the leasing company] never intended to fulfill its implied promise

5   of legitimate employment status and workers' compensation insurance to all leased employees")

6   (emphasis omitted).

7        As for *Price*, the court did state concern about litigants trying "to convert contractual

8   disputes into litigation over alleged fraud." *Price*, 213 Cal. App. 3d at 485.  However, the court

9   made this statement in the context of explaining why there was justification for recognizing only

10  certain kinds of promissory fraud as falling within the fraud exception to the parol evidence rule.

11  The *Price* court did not state that a claim for fraud based on the defendant's lack of intent to perform

12  the contract could never be brought.

13        Glimmerglass argues still that there can be no cognizable fraud claim because "an allegedly

14  false promise is not actionable where it does not pertain to *existing* and material facts, and promises

15  of future acts or performance (even when made 'without intentions to perform') are opinions, not

16  facts." Mot. at 15 (emphasis in original).  This argument lacks merit.  By statute, a promise to do

17  something without the intent to perform is recognized as actionable fraud.  *See* Cal. Civ. Code §

18  1710(4) (providing as an example of deceit "[a] promise, made without any intention of performing

19  it").  As explained in Witkin:

20        Statements relating to what may happen in the future are
          generally not actionable, and the mere failure to perform a promise is
21        not a tort.  On the other hand, a statement of what the defendant or
          some third person *intends to do* relates to an existing state of mind,
22        and is a representation of fact.

23        It is on this theory that a *promise made without any intention to*
          *perform* may constitute fraud.  A promise to do something necessarily
24        implies the intention to perform, and where that intention is absent,
          there is an implied misrepresentation fo fact, which is actionable fraud.
25        This type of action has been referred to as one of "promissory fraud."

26  5 Witkin, Summ. of Cal. Law, Torts § 781 (2005) (emphasis in original); *see also Lazar v. Superior*

27  *Court*, 12 Cal. 4th 631, 638 (1996) (stating that "'[p]romissory fraud' is a subspecies of the action

28  for fraud and deceit [and that] [a] promise to do something necessarily implies the intention to

9

**United States District Court**
For the Northern District of California

1    perform; hence, where a promise is made without such intention, there is an implied

2    misrepresentation of *fact* that may be actionable fraud"); *Diamond Woodworks*, 109 Cal. App. 4th at

3    1046 (noting the same).

4           Notably, the case upon which Glimmerglass relies – *City of Oakland v. Comcast Corp.*, No.

5    C 06-5380 CW, 2007 U.S. Dist. LEXIS 14512 (N.D. Cal. Feb. 14, 2007) – is consistent with the

6    Witkins treatise and the cases cited above.  In *Comcast*, Judge Wilken noted that the plaintiff's

7    complaint failed to specify what misrepresentations had allegedly been made by the defendant.  She

8    stated that, "[i]f the [defendant's] representations were *predictions* that [the other company] would

9    perform its obligations under the 2002 Agreements, then they would be opinions as opposed to facts,

10   and thus not the basis for a colorable negligent misrepresentation claim."  *Id.* at *19 (emphasis

11   added).  However, she went on to say that, if "the representations were *promises* that [the defendant-

12   company] would cause [the other company] to perform its obligations, then the City would have to

13   allege that these promises were made by [the defendant-company] without a reasonable intent to

14   perform."  *Id.* (emphasis added).  Thus, implicitly, Judge Wilken recognized that the latter

15   constituted actionable promissory fraud.

16          In sum, a claim of promissory fraud asserting there was no intent to fulfill a contractual

17   promise at the time the promise was made is actionable if supported by evidence beyond a bare

18   conclusory allegation.

19                   d.    <u>Misrepresentation to Induce SPAs</u>

20          As discussed above, the second fraud theory offered by Terilogy is one of fraudulent

21   inducement -- *i.e.*, Glimmerglass promised to give Terilogy exclusive distribution rights in order to

22   induce Terilogy to enter into the SPAs.  The SPAs do not contain an express term reflecting that the

23   agreements were conditioned on or entered into in exchange for exclusive distributor rights afforded

24   to Terilogy under the DA.  As such, evidence of such an unwritten term or condition of an integrated

25   agreement would be barred by the parol evidence rule unless the fraud exception under § 1856(g)

26   applies.  *See* Cal. Code Civ. Proc. § 1856(g) ("This section does not exclude other evidence . . . to

27   establish . . . fraud.").

28

United States District Court

For the Northern District of California

To the extent Terilogy argues that the alleged condition (that it have exclusive distributor rights) is not an additional term to the SPAs (*i.e.*, that it is instead an implicit term in the SPAs), the Court rejects that argument. Although the First SPA and DA were signed on the same day, each contract is an integrated agreement. Neither contract incorporated the other by reference. Nor is there anything else in either contract to indicate that one agreement was given in exchange for or as a condition to the other. At best, the Schedule of Exceptions for the First SPA notes that the parties "intend to negotiate a distribution agreement for Terilogy to sell the Company's products in Japan [and that,] [a]s part of the relationship, it would be expected that Terilogy would invest $1 million in the Company's Series B-1 financing." First Schedule of Exceptions ¶ 3.7(b)(i). But the Schedule of Exceptions is simply a disclosure intended for investors. The Schedule does not purport in any way to insert a substantive term or condition in the SPA. Furthermore, the Schedule says nothing about what the terms of that distribution agreement referred to therein might be. A distribution agreement does not necessarily provide for exclusive distribution rights. In short, the language in the Schedule of Exceptions is not reasonably susceptible of the meaning suggested by Terilogy. *See Banco Do Brasil*, 234 Cal. App. 3d at 1001 ("'If a writing is deemed integrated, extrinsic evidence is admissible only if it is relevant to prove a meaning to which the language of the instrument is reasonably susceptible.'"). Hence, as a matter of contract interpretation, the parol evidence rule bars the importation of the DA as a term or condition of the SPAs.

The Court therefore turns to the fraud exception to the parol evidence rule. The fraud exception has its roots in a California Supreme Court case by the name of *Bank of America Trust & Savings Association v. Pendergrass*, 4 Cal. 2d 258 (1935). There, the California Supreme Court stated:

> Our conception of the rule which permits parol evidence of fraud to establish the invalidity of the instrument is that it must tend to establish some independent fact or representation, some fraud in the procurement of the instrument or some breach of confidence concerning its use, and not a promise *directly at variance* with the promise of the writing.

*Id.* at 263 (emphasis added.).

United States District Court

For the Northern District of California

Courts interpreting the fraud exception have done so consistent with *Pendergrass*. *See, e.g.*, *Alling*, 5 Cal. App. 4th at 1436 ("'Promissory fraud' is a promise made without any intention of performing it. The fraud exception to the parol evidence rule does not apply to such promissory fraud *if* the evidence in question is offered to show a promise which *contradicts* an integrated written agreement. Unless the false promise is either independent of or consistent with the written instrument, evidence thereof if inadmissible.") (emphasis added); *Banco Do Brasil*, 234 Cal. App. 3d at 1009 ("While it is true that a recognized exception to the parol evidence rule permits evidence of fraud in order to nullify the main agreement, that rule has no application where promissory fraud is alleged, *unless* the false promise is independent of or consistent with the written instrument. It does not apply where, as here, parol evidence is offered to show a fraudulent promise *directly at variance* with the terms of the written agreement.") (internal quotation marks omitted; emphasis added); *Price v. Wells Fargo Bank*, 213 Cal. App. 3d 465, 484 (1989) ("'A distinction has been made by our courts in cases in which the fraud sought to be proved consists of a false promise. They have held that if, to induce one to enter into an agreement, a party makes an independent promise without intention of performing it, this separate false promise constitutes fraud which may be proven to nullify the main agreement; but *if* the false promise relates to the matter covered by the main agreement and *contradicts or varies* the terms thereof, any evidence of the false promise directly violates the parol evidence rule and is inadmissible.'") (emphasis added).

Under *Pendergrass*, Terilogy has alleged enough to fall within the fraud exception. That is, Terilogy has alleged fraud in the procurement of the SPAs; the alleged promise of exclusive distributor status as a condition to and *quid pro quo* for the SPA is not "directly at variance with" the SPAs. *Pendergrass* 4 Cal. 2d at 263.

A promise is not "directly at variance" with an agreement simply because it materially alters or adds to an agreement. Otherwise the fraud exception to the parol evidence rule would effectively be rendered null. To satisfy the "directly at variance" requirement, it must be shown that the promise contradicts the express terms of the agreement. Under those circumstances, an accuser should not be able to assert a promise by parol evidence which flies directly in the face of an express provision of an integrated contract, since any reliance on such a promise would presumably be

**United States District Court**
For the Northern District of California

unreasonable. Hence, courts have rejected the fraud exception to the parol evidence rule where there is a clear contradiction. *See Alling*, 5 Cal. App. 4th at 1436 ("The fraud exception to the parol evidence rule does not apply to such promissory fraud if the evidence in question is offered to show a promise which *contradicts* an integrated written agreement.") (emphasis added); *Brinderson-Newberg Joint Venture v. Pac. Erectors*, 971 F.2d 272 (9th Cir. 1992), available at 1992 U.S. App. LEXIS 27032, at *24 ("California holds parties responsible for signing integrated contracts and will allow parol evidence of fraud only to the extent it does not *contradict* the integrated contract.") (emphasis added)[2]; *see also Banco Do Brasil*, 234 Cal. App. 3d at 1009 ("While it is true that a recognized exception to the parol evidence rule permits evidence of fraud in order to nullify the main agreement that rule has no application where promissory fraud is alleged, unless the false promise is *independent of or consistent with* the written instrument.") (internal quotation marks omitted; emphasis added). So construed, the fraud exception to the parol evidence rules navigates a middle course between nullifying the fraud exception on the one hand, and ignoring the effect of an integrated contract on the other.

The Court acknowledges that *Mat-Van, Inc. v. Sheldon Good & Co. Auctions, LLC*, No. 07-CV-912 -- IEG (BLM), 2008 U.S. Dist. LEXIS 8724 (S.D. Cal. Feb. 6, 2008), lends support to Glimmerglass's overall position. *See Mat-Van*, 2008 U.S. Dist. LEXIS 8724, at *10-14 (indicating that the fraud exception does not apply to any kind of promissory fraud, *i.e.*, "promises made without the intention to perform"; holding that, "where plaintiffs assert defendant misrepresented then-existing facts, plaintiffs have stated an element of a deceit claim" but that, "where plaintiffs allege defendant made misrepresentations as to defendant's future actions or future facts, plaintiffs are making a promissory fraud claim"). However, *Mat-Van* appears to be incorrectly decided. The

---

[2] *See, e.g.*, *Sanguinetti v. Viewlogic Systems, Inc.*, No. C 95 2286 TEH, 1996 U.S. Dist. LEXIS 1219, at *48 (N.D. Cal. Jan. 24, 1996) ("Plaintiffs allege that Defendant promised to leave corporate control in the hands of Chronologic when the Reorganization Agreement hands corporate power over to Alaain Hanover, the President of Viewlogic and the sole member of Chronologic's postmerger Board."); *Davis v. Gulf Oil Corp.*, 572 F. Supp. 1393, 1400-01 (C.D. Cal. 1983) ("[P]laintiff seeks to establish by parol evidence that a promise was made regarding the renewal terms of the contract which would directly contradict the renewal provisions of the written agreement. This is not the typical 'non-contradictory promise,' but is in fact precisely at odds with the contents of the writing. Thus, it would be impermissible to admit evidence regarding the alleged oral representations at trial in this matter.").

United States District Court

For the Northern District of California

1    court in *Mat-Van* seemed to believe that the fraud exception does not apply to *any* kind of

2    promissory fraud.  *See id.* at *10-11 ("The fraud exception . . . is limited in scope and does not apply

3    to allegations of 'promissory fraud,' that is, promises made without the intention to perform.").   But

4    the very case cited by the *Mat-Van* court in support of that proposition -- *i.e.*, *Alling*, 5 Cal. App. 4th

5    at 1436 -- indicates otherwise.

> "Promissory fraud" is a promise made without any intention of
> performing it.  The fraud exception to the parol evidence rule does not
> apply to such promissory fraud *if* the evidence in question is offered to
> show a promise which contradicts an integrated written agreement.
> Unless the false promise is either independent of or consistent with the
> written instrument, evidence thereof if inadmissible.

10    *Id.* (emphasis added).  *Alling* makes clear that only certain kinds of promissory fraud fall outside the

11    fraud exception -- *i.e.*, promissory fraud that is directly at variance with the written agreement.

12        In sum, notwithstanding the parol evidence rule, a claim for promissory fraud may lie where

13    the alleged inducing promise is not "directly at variance" -- *i.e.*, does not contradict  -- the express

14    terms of agreement.  The alleged promise here -- that Terilogy would be given an exclusive

15    distributorship in exchange for or as a condition to the SPA -- does not contradict any express

16    provision of the SPA.  The parol evidence rule is therefore not a bar to its assertion herein.

17        2.    Rule 9(b)

18        Glimmerglass argues that, notwithstanding the above, the fraud claim must still be dismissed

19    because Terilogy has failed to state "with particularity the circumstances constituting fraud," as

20    required by Rule 9(b).  Fed. R. Civ. P. 9(b).  According to Glimmerglass, Terilogy has failed to

21    identify the person who made the fraudulent representation, the authority of that person to speak for

22    Glimmerglass, the person to whom the fraudulent representation was made, what was said or

23    written, and where and when it was said or written.  *See* Mot. at 18, 20.

24        In response, Terilogy argues that it has satisfied the Rule 9(b) standard because the

25    fraudulent representation was the representation in the DA that Glimmerglass would use its best

26    efforts to grant Terilogy exclusive distribution rights.  *See* Opp'n at 6-7.

27        Terilogy's argument is persuasive to the extent that its fraud theory is that Glimmerglass

28    made a promise in the DA that it never intended to perform.  However, to the extent that its fraud

**United States District Court**
For the Northern District of California

1  theory is that Glimmerglass made a representation that induced Terilogy to enter into the SPAs,

2  more particularity is needed.  As Terilogy seemed to concede at the hearing, the representation may

3  be corroborated by the DA, the fact that the DA and SPA were signed on the same date, and the

4  Schedule of Exceptions which referenced the contemplated distributorship, but those documents do

5  not constitute the promise/representation itself.  At best they are evidence of it.  Terilogy must

6  therefore state with particularity the terms of the promise, who made it, when, and so forth, so that

7  Glimmerglass can meaningfully prepare a response.

8  C.      Negligent Misrepresentation

9          The analysis applicable to the fraud claim is applicable here as well.

10 D.      Rescission of Contract Based on Mistake

11         In its complaint, Terilogy also asserts a claim for rescission of the SPAs based on mistake.

12 The mistake pertains to the scope of applicability of the OEM exception.  As noted above, under the

13 DA, Terilogy was given exclusive distribution rights with some limited exceptions.  One of those

14 exceptions related to OEMs.

> [Terilogy] will distribute Products to end users and resellers located in the Territory in connection with the distribution of its offerings (excluding OEMs -- as defined below).  [Terilogy] will have the exclusive responsibility to engage and manage resellers in the Territory and the non exclusive responsibility in vertical markets other than those certain vertical markets specified in Exhibit B.  [Terilogy] will not have exclusive responsibility for OEM's, (that is, purchasers of Products who incorporate the Products into a substantially different product for resale -- "OEMs").

20 DA ¶ 1.2.  According to Terilogy, after the parties executed the DA and the First SPA on the same

21 day, a disagreement arose "as to what constituted an OEM sale" and it became "clear that the parties

22 had never, in fact, understood this point or reached an agreement about it."  Compl. ¶ 40.  Terilogy

23 asserts: "This failure to reach an understanding on the definition of an OEM evidences a mutual

24 mistake of fact as to a material term in the Distribution Agreement."  Compl. ¶ 41.  Terilogy also

25 suggests as an alternative theory unilateral mistake.  *See* Compl. ¶ 42.

26         In its motion to dismiss, Glimmerglass argues that this claim for rescission should be

27 dismissed for two reasons: (1) because Terilogy has pleaded at best a mistake of law, which is not

28 cognizable as a basis for rescission, and (2) because Terilogy has failed to plead mistake with

1   particularity as required by Rule 9(b).  In its reply brief, Glimmerglass makes an additional point

2   that it did not previously raise -- *i.e.*, that the mistake is alleged with respect to the DA but Terilogy

3   is not trying to rescind the DA but rather the SPAs.  *See* Reply at 4.

4          The Court shall not address the last argument as Glimmerglass did not raise it until its reply

5   brief.  Moreover, even if the Court were to consider the merits of the argument, additional briefing

6   would be needed.  To be sure, it seems unlikely that a mistake as to one agreement (the DA) would

7   allow for rescission of an entirely different agreement (the SPAs) absent, *e.g.*, a contractual

8   relationship between the agreements condition one on the other (which as discussed above is not the

9   case here as a matter of contract law).  However, the parties have not briefed whether there might be

10  another theory available to Terilogy if it proves it would not have entered into the SPAs had it not

11  been mistaken about the terms of the DA.  *See Hess v. Ford Motor Co.*, 27 Cal. 4th 516, 525 (2002)

12  ("In determining whether a mutual mistake has occurred, a court may consider parol evidence.").

13         Nor is it necessary for the Court address the second argument because dismissal is

14  appropriate based on the first argument alone – *i.e.*, what Terilogy has alleged is simply a mistake of

15  law that is not cognizable under California law.

16         California Civil Code § 1689(b)(1) provides in relevant part that a contract may be rescinded

17  "[i]f the consent of the party rescinding, or of any party jointly contracting with him, was given by

18  mistake."  Cal. Civ. Code § 1689(b)(1).  There are two kinds of mistake that can be made: (1) a

19  mistake of fact, *see id.* § 1577, and (2) a mistake of law.  *See id.* § 1578.  Terilogy claims that it has

20  alleged a mistake of fact pursuant to California Civil Code § 1577(2) -- *i.e.*, a "[b]elief in the present

21  existence of a thing material to the contract, which does not exist, or in the past existence of such a

22  thing, which has not existed."  *Id.* § 1577(2).  According to Terilogy, the thing that does not exist is

23  a distinction between OEM and non-OEM purchasers.  "[I]t is explicitly stated in the Distribution

24  Agreement that OEMs exist and are knowable entities distinguishable from other purchasers," but

25  "[this] distinction between OEM and non-OEM purchasers was at all times, unbeknownst to

26  [Terilogy], a false one."  Opp'n at 14.

27         Terilogy's argument is not convincing.  As Glimmerglass argues, the mistake here -- as

28  alleged in the complaint -- is about what fell within the OEM exception and whether the

United States District Court

For the Northern District of California

1    arrangement with the third party, Nissho, constituted an OEM arrangement.  That is a matter of

2    contract interpretation.  That is not a mistake about the existence of something that did not really

3    exist.  *Hedging Concepts, Inc. v. First Alliance Mortgage Co.*, 41 Cal. App. 4th 1410 (1996), a case

4    cited by Glimmerglass, is directly on point.

5         In *Hedging*, the plaintiff and the defendant entered into a contract pursuant to which the

6    defendant would pay a commission to the plaintiff for certain services.  *See id.* at 1414.  The

7    contract, unfortunately, did not expressly describe what services the plaintiff had to perform in order

8    to get paid.  *See id.* at 1415.  The court addressed whether the plaintiff's mistake as to the scope of

9    his contractual duties could be the basis of rescission.  According to the court, "[c]learly, there was

10   no mistake of objective existing fact involved here, and Civil Code section 1577 therefore does not

11   apply.  The supposed mistake was instead [the plaintiff's] subjective misinterpretation of the

12   contract.  This at most a mistake of law," which "does not fit the definition of mistake of law

13   supporting rescission."  *Id.* at 1421.  The court explained:

14            A mistake of law as defined by Civil Code section 1578 exists only
              when 1) all parties think they know and understand the law but all are
15            mistaken in the same way, or 2) when one side misunderstands the law
              at the time of contract and the other side knows it, but does not rectify
16            that misunderstanding.  Neither of these two possibilities occurred on
              the facts found by the trial court.  Clearly, each side here placed a
17            different interpretation on the contract, hence all parties did not make
              the same mistake.  In fact, the court found that [the defendant] made
18            no mistake at all, but rather understood the contract correctly.  Nor
              was there a finding (nor any evidence) that either party knew at the
19            time of contract that the other side misunderstood the deal, and yet
              failed to rectify that misunderstanding. Instead, the court simply found
20            that the parties had differing subjective understandings of the contract
              from the inception.  This does not constitute a "mistake" for rescission
21            purposes.

22   *Id.*  The court went on to say that

23            [t]here are two reasons courts will not set aside contracts for mere
              subjective misinterpretation.  First, to declare rescission based upon
24            mistaken undisclosed subjective interpretation would conflict with the
              objective theory of enforceable contracts.  If this were the law, the
25            objective theory of contracts would give with one hand,  while the
              subjective misunderstanding theory of rescission would take away
26            with the other.  This is not the law.  Second, a unilateral
              misinterpretation of contractual terms, without knowledge by the other
27            party at the time of contract, does not constitute a mistake under either
              Civil Code section 1577 or 1578.

28

1    *Id.* at 1421-22.

2         Terilogy tries to distinguish *Hedging* on the basis that, there,

3              the plaintiff alleged the existence of terms that were not specifically
             stated in the written agreement, and . . . the parties committed a
4            mistake of fact as to the application of the unwritten terms. . . . Here,
             [Terilogy] does not allege that the parties were "ignorant of, or
5            misunderstood, the provisions of the contract" but rather that a
             fundamental provision of the Agreements, the existence of a
6            distinction between OEM and non-OEM purchasers, was unfounded
             and never agreed upon.

7

8    Opp'n at 15.  But *Hedging* did not turn on the fact there was a disagreement as to a nonexpress

9    contractual term.  The bottom line was that there was a dispute over the interpretation of the contract

10   -- *i.e.*, what was the plaintiff required to do before he could get paid -- and the dispute here also

11   seems best characterized as a dispute over contract interpretation -- *i.e.*, what constitutes an OEM

12   sale/purchase and what does not.  *See Blumenfeld v. R. H. Macy & Co.*, 92 Cal. App. 3d 38, 46

13   (1979) (noting that, "[u]nder the objective test of contract formation, a 'meeting of the minds' is

14   unnecessary" and that "[a] party is bound, even if he misunderstood the terms of a contract and

15   actually had a different, undisclosed intention").  What is or is not an OEM sale/purchase is not an

16   "objective . . . fact."  *Hedging*, 41 Cal. App. 4th at 1421; *cf. Welles v. Acad. of Motion Picture Arts

17   & Scis.*, No. CV 03-05314 DDP (JTLx), 2004 U.S. Dist. LEXIS 5756, at *9-10 (C.D. Cal. Mar. 4,

18   2004) (citing the Restatement of Contracts for the proposition that "[a] mistake of fact generally

19   consists of (1) an error as to the nature of the transaction; (2) an error as to the identity of a person

20   contracted with; (3) an error as to the identity of the thing to which the contract relates; and (4) an

21   error as to a collateral matter").  *Compare Hess v. Ford Motor Co.*, 27 Cal. 4th 516, 528 (2002) (in

22   case where release agreement between plaintiff and third party contained broad language ostensibly

23   releasing all tortfeasors, including defendant, from liability, concluding that inclusion of broad

24   language was a mutual mistake; noting that "the contracting parties [*i.e.*, plaintiff and third party]

25   did not simply offer subjective opinions about the scope of the Release but related objective facts

26   surrounding their negotiations over the Release, including the contents of their discussions").  A

27   dispute over the meaning of an express contractual term is not the type of mistake that can support

28   rescission.  *See, e.g.*, *Blumenfeld*, 92 Cal. App. 3d at 46 (stating that plaintiff was simply mistaken

United States District Court

For the Northern District of California

1  that it had retained a claim against defendant when a contract between plaintiff and a third party

2  explicitly assigned to the third party "'all claims against third parties relating to the Center'").

3       That Terilogy's claim is basically a dispute over contract interpretation is made clear by

4  Terilogy's acknowledgement at the hearing that the parties tried to negotiate an amendment to the

5  DA in order to "clear up the definition of OEM."  It appears that a tentative agreement was within

6  reach, but was never finalized.  Terilogy has failed to prove this was nothing more than a dispute

7  over contract interpretation, for which a claim of mistake does not lie.

8  E.     <u>Unjust Enrichment</u>

9       Finally, Glimmerglass argues that the claim for unjust enrichment should be dismissed

10  because it is not a recognized cause of action under California law.  There are numerous cases that

11  support Glimmerglass's position.  *See, e.g.*, *Jogani v. Superior Court*, 165 Cal. App. 4th 901, 911

12  (2008) (stating that "unjust enrichment is not a cause of action" and that "it is a general principle

13  underlying various doctrines and remedies, including quasi-contract")[3]; *McKell v. Washington*

14  *Mutual, Inc.*, 142 Cal. App. 4th 1457, 1490 (2006) (stating that "[t]here is no cause of action for

15  unjust enrichment" and that "unjust enrichment is a basis for obtaining restitution based on

16  quasi-contract or imposition of a constructive trust"); *Melchior v. New Line Productions, Inc.*, 106

17  Cal. App. 4th 779, 794 (2003) (stating that "there is no cause of action in California for unjust

18  enrichment"; adding that "[u]njust enrichment is a general principle, underlying various legal

19  doctrines and remedies, rather than a remedy itself" and "is synonymous with restitution") (internal

20  quotation marks omitted); *see also Creager v. Yoshimoto*, No. C 05-01985 JSW, 2007 U.S. Dist.

21  LEXIS 77309, at *13-14 (N.D. Cal. Oct. 9, 2007) (stating that "unjust enrichment is a theory of

22  recovery, not an independent legal claim"); *Walker v. USAA Cas. Ins. Co.*, 474 F. Supp. 2d 1168,

23  1174 (E.D. Cal. 2007) (stating that "unjust enrichment is a merely a synonym for the remedy of

24  restitution and not a stand-alone cause of action").

25

26      [3] "Quasi-contract is simply another way of describing the basis for the equitable remedy of restitution when an unjust enrichment has occurred.  Often called quantum meruit, it applies [w]here

27  one obtains a benefit which he may not justly retain . . . . The quasi-contract, or contract implied in law, is an obligation created by the law without regard to the intention of the parties, and is designed to restore the aggrieved party to his former position by return of the thing or its equivalent in money."

28  *McBride v. Boughton*, 123 Cal. App. 4th 379, 388 n.6 (2004) (internal quotation marks omitted).

**United States District Court**
For the Northern District of California

1    But, as Terilogy points out and as Glimmerglass acknowledges, some California courts have

2  held that a cause of action for unjust enrichment does exist.[4]  *See Peterson v. Cellco P'ship*, 164 Cal.

3  App. 4th 1583, 1593 (2008) (stating that "[t]he elements of an unjust enrichment claim are the

4  'receipt of a benefit and [the] unjust retention of the benefit at the expense of another'");

5  *Lectrodryer v. Seoul Bank*, 77 Cal. App. 4th 723, 726 (2000) (stating the same); *First Nationwide*

6  *Savings v. Perry*, 11 Cal. App. 4th 1657, 1670 (1992) (stating that, with an amendment to the

7  complaint, plaintiff could state a claim for unjust enrichment).  Moreover, in *Ghirardo v. Antonioli*,

8  14 Cal. 4th 39 (1996), the California Supreme Court stated that a cause of action may be pleaded on

9  a theory of unjust enrichment.  *See id.* at 43-44, 52 (also citing approvingly the *First Nationwide*

10  *Savings* case, which held that "a cause of action for unjust enrichment could be stated" under certain

11  circumstances).

12    Given the conflicting state law, the Court shall not dismiss the unjust enrichment claim on

13  the basis that there is no such cause of action.  The Court, however, does agree with Glimmerglass

14  that the unjust enrichment claim rises or falls with the fraud claim, as even Terilogy has effectively

15  conceded in its opposition papers.  *See* Opp'n at 16 (asserting that Terilogy has sufficiently pled a

16  claim for unjust enrichment since it has alleged, *inter alia*, that "it would be unconscionable for

17  Defendant to retain the investment that it wrongfully procured from Plaintiff due its

18  misrepresentations and lack of intent to provide Plaintiff with the bargained for benefit").

19  ///

20  ///

21  ///

22  ///

23  ///

24  ///

25  ///

26

27      [4] In *Parrish v. NFL Players Association*, 534 F. Supp. 2d 1081 (N.D. Cal. 2007), Judge Alsup
took note of the split in authority.  *See id.* at 1100 ("California courts appear to be split on whether
28  unjust enrichment can be an independent claim or merely an equitable remedy.").

**III.   <u>CONCLUSION</u>**

For the foregoing reasons, Glimmerglass's motion to dismiss is granted.  The rescission claim based on mistake is dismissed with prejudice.  The fraud, negligent misrepresentation, and unjust enrichment claims are dismissed without prejudice for failure to comply with Rule 9(b). Terilogy has until twenty (20) days of the date of this order to file an amended complaint in compliance with Rule 9(b).

This order disposes of Docket No. 12.


IT IS SO ORDERED.


Dated:  October 30, 2008

_____
EDWARD M. CHEN
United States Magistrate Judge

**United States District Court**
For the Northern District of California

21